Your Name: CARL ANTHONY GRIMES

Address: P.O BOX 1596

Phone Number: (650)-720-0293

Fax Number:

E-mail Address: anthonygrimes318@yahoo.com

Pro Se Plaintiff

FILED #5

APR 20 2017   ifp

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## United States District Court

### Northern District of California

CV 17   2218

KAW

CARL ANTHONY GRIMES

Plaintiff(s),

vs.

SAN MATEO HUMAN SERVICES AGENCY

MICHAEL SULLIVAN

KARLA STEHL

Defendant(s).

Case Number: *[leave blank]*

**COMPLAINT**

DEMAND FOR JURY TRIAL

Yes ☑   No ☐

1. **Parties in this Complaint**

   a. **Plaintiff(s).** *Write your name, address, and phone number. If there are other plaintiffs, use more pages to include their names, addresses, and phone numbers.*

   Name: CARL ANTHONY GRIMES

   Address: P.O. BOX 1596

   MILLBRAE, CA. 94030

   Phone number: (650) 720-0293

COMPLAINT

PAGE 1 OF 61 [JDC TEMPLATE]

rev: 6/2013

b.  **Defendant(s).** *Write the full name and address of every defendant.  If the defendant is a corporation, write the state where it is incorporated and the state where it has its main place of business.  Use more pages if you need to.*

**Defendant 1:**

Name:___MICHAEL SULLIVAN___

Address:___1487 HUNTINGTON AVE.___

___SOUTH SAN FRANCISCO CA. 94080___

**Defendant 2:**

Name:___KARLA STEHL___

Address:___1487 HUNTINGTON AVE.___

___SOUTH SAN FRANCISCO CA. 94080___

**Defendant 3:**

Name:_____

Address:_____

_____

**Defendant 4:**

Name:_____

Address:_____

_____

2.  **Jurisdiction**

*Usually, only two types of cases can be filed in federal court: cases involving "federal questions" and cases involving "diversity of citizenship."  Check at least one box.*

☑    My case belongs in federal court under <u>federal question jurisdiction</u> because it is about federal law(s) or right(s).

*Which law(s) or right(s) are involved?* ___AMENDMENT RIGHTS CONCERNING THE FOURTH, SIXTH, AND FOURTEENTH AMENDMENTS, 42 U.S.C. SECTION 1983___

☐    My case belongs in federal court under <u>diversity jurisdiction</u> because none of the plaintiffs live in the same state as any of the defendants <u>AND</u> the amount of damages is more than $75,000.

COMPLAINT

### 3. Venue

*This Court can hear cases arising out of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo, and Sonoma counties. This is the right court to file your lawsuit if 1) All defendants live in California AND at least one of the defendants lives in this district; OR 2) A substantial part of the events you are suing about happened in this district; OR 3) A substantial part of the property that you are suing about is located in this district; OR 4) You are suing the U.S. government or a federal agency or official in their official capacities and you live in this district. Explain why this district court is the proper location to file your lawsuit.*

Venue is appropriate in this Court because ___SAN MATEO COUNTY SOCIAL SERVICES AGENCY IS IN THE NORTHERN DISTRICT COURT JURISDICTION___

### 4. Intradistrict Assignment

*There are three divisions of this Court: San Francisco/Oakland, San Jose, and Eureka. The San Francisco/Oakland division covers Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo, and Sonoma counties. The San Jose division covers Monterey, San Benito, Santa Clara, Santa Cruz counties. The Eureka division covers Del Norte, Humboldt, Lake, Mendocino counties, only if all parties consent to a magistrate judge. Explain which division your case should be assigned.*

This lawsuit should be assigned to [*Select one: San Francisco/Oakland, San Jose, OR Eureka*] Division of this Court because ___SAN FRANCISCO BECAUSE I HAVE 2 RELATED CASES IN SAN FRANCISCO NORTHERN DISTRICT COURT.___

### 5. Statement of Facts and Claims

*Write a short and simple description of the facts of your case. Include WHERE and WHEN the events happened, WHO was involved, WHAT role each defendant played, and HOW you were harmed. If you know which laws or rights the defendant violated, you can include them, but you do not need to make legal arguments. Put each fact or claim into a separate, numbered*

COMPLAINT

*paragraph, starting with 5a, 5b, and so on. Attach additional sheets of paper as necessary. You may attach documents that support your claims to the end of this Complaint as exhibits. Explain what each exhibit is, when and how you got it, and how it supports your claims. Attaching a document to your Complaint does not necessarily mean that it will be accepted as evidence.*

MY JUVENILE DEPENDENCY CASE CONCERNING MY CHILDREN CHILDREN AND MY FIANCE CHILDREN, THERESA MARTINEZ WAS TRANSFERED FROM SAN FRANCISCO JUVENILE COURT TO SAN MATEO COUNTY JUVENILE COURT IN AUGUST OF 2016 THE FORMER SAN FRANCISCO SOCIAL WORKER CONTACTED THE SAN MATEO SOCIAL WORKER IN SEPTEMBER OF 2016 FABRICATED FALSE ALLEGATIONS I SEXUALLY ABUSED MY DAUGHTER IN ORDER TO PREJUDICE THE SAN MATEO SOCIAL WORKER AND JUVENILE COURT AGAINST ME. THE SAN MATEO WORKER CONTACTED THE POLICE, FILED FALSE POLICE REPORT, THE SAN MATEO JUVENILE COURT ADMITTED THIS FALSE REPORT AS EVIDENCE, NO WITNESS WAS EVER PRESENTED IN COURT AGAINST ME, NO COURT HEARING OCCURED. DUE PROCESS VIOLATIONS CONCERNING THE 4TH, 6TH, AND 14TH AMENDMENTS RIGHTS.

PLEASE SEE THE DETAILED ATTACHMENTS CONCERNING THIS MALICIOUS FABRICATED SEXUAL ABUSE CASE FROM SAN FRANCISCO COUNTY AND SAN MATEO COUNTY SOCIAL WORKERS CONCERNING CONSTITUTIONAL CIVIL RIGHTS.

COMPLAINT

6. **Demand for Relief**

*State what you want the Court to do for you. For example, depending on which claims you raise, it may be appropriate to ask the Court to award you money or order the defendant to do something or stop doing something. If you are asking for money, you can say how much you are asking for and why you should get that amount.*

I SEEK AN AWARD FOR DAMAGES DUE TO THE BEHAVIOR OF THE COUNTY SOCIAL WORKERS, FABRICATING FALSE EVIDENCE I SEXUALLY ABUSED MY DAUGHTER, ATTEMPTING TO CAUSE MY ARREST, FABRICATING FALSE EVIDENCE TO THE JUVENILE COURT IN ORDER TO PLACE MY CHILDREN UNDER THE SUPERVISION OF THE STATE AND PREVENT MY CHILDRENS CASE FROM BEING DISMISSED BY FABRICATING FALSE EVIDENCE TO THE JUVENILE COURT AND DENYING ME WITH MY CONSTITUTIONAL RIGHTS.

7. **Demand for Jury Trial**

*Check this box if you want your case to be decided by a jury, instead of a judge.*

☑ Plaintiff demands a jury trial on all issues.

*All plaintiffs must sign, date, and print their names at the end of the Complaint. Attach another page if you need to.*

Respectfully submitted,

Date: 04/20/2017        Sign Name: _____

Print Name: CARL ANTHONY GRIMES

COMPLAINT



# Instructions: Writing and Filing a Complaint

These forms were prepared by the Justice & Diversity Center, a nonprofit organization, and are not official court forms. They can be used to file non-prisoner, civil lawsuits in the Northern District Court of California.

## Checklist

This packet provides a general Complaint form. **This form is also available in a fillable pdf version on the Court's website at www.cand.uscourts.gov/Legal-Help-Center-Templates.** You also need to file some official court forms:

- **Civil Cover Sheet**
- **Summons with Proof of Service**
- **Application to Proceed in Forma Pauperis** (if you cannot pay the $400 filing fee).

## General Instructions

A.      **Fill out the Complaint COMPLETELY.** Instructions are provided *in italics* to help you fill in the blanks. You and any other plaintiffs must sign and date the Complaint and other papers you file. **You may have limited time to file your Complaint.**

B.      The fee for filing a complaint in this Court is $400. If you cannot afford to pay, fill out the Application to Proceed In Forma Pauperis (a request for the Court to let you file without paying a fee upfront) and file it with the rest of the forms.

C.      Deliver or mail the **original plus three copies** of each form to the Clerk's Office at the federal courthouse where you are filing your case. The Clerk will take the original and two copies. The other copy is for you to keep after it is stamped by the Clerk. If you file by mail, include a self-addressed, stamped envelope so that the Clerk can send a copy back to you.

D.      Be sure that your Complaint is served on the defendant(s). Read about how to serve the complaint in the Handbook for Pro Se Litigants (see below).

E.      You must tell the Clerk right away if your mailing address changes, or you may miss important deadlines, causing you to lose your case.

## More Information

This packet does NOT tell you everything you need to know about filing and serving a Complaint. **Before you file your Complaint,** we recommend that you:

- If your case is in the San Francisco/Oakland federal courthouse, make an appointment with the **Legal Help Center** for free legal information and advice by calling 415-782-8982 OR sign up at 450 Golden Gate Ave., S.F., 15th Floor, Room 2796 OR 1301 Clay Street, Oakland, 4th Floor, Room 470S. If your case is in San Jose, make an appointment



Justice   Diversity
CENTER
OF THE BAR ASSOCIATION OF SAN FRANCISCO

with the **Federal Pro Se Program** by calling (408) 297-1480 OR by signing up at 280 South First Street, S.J., Room 2070.

- Read **Chapter 4** of the **Handbook for Pro Se Litigants** for an explanation of how to write a Complaint, available at the Clerk's Office or on the Court's website at www.cand.uscourts.gov/prosehandbk.

Deprivation of Civil Rights title 42 Section 1983.
In violation of the plaintiff Fourth, and Six, and Fourteenth Amendment Rights of the United States Constitution.

The Plaintiff Sues the Defendants in their individual and official capacities as San Mateo county Social Worker's.
Michael Sullivan, MD58,
Karla Stelh, MD25.
The Defendants Policies and Practices are in violation of the Fourth, and Six, and Fourteenth Amendment Rights of the United States Constitution.

Fabricated evidence to the juvenile court.

Due to an alleged incident of Domestic violence in January of 2015.
The plaintiff was arrested but not charged.
The plaintiff 3 children ages 4, 3, and 2, were taken into protective custody by San Francisco social services.  Although the Plaintiff arrest did not result in a conviction or a plea, the end result was a dismissal. San Francisco county Social Services placed the plaintiff children in foster care for 11 Months. The plaintiff children never made an allegation against their father, the plaintiff. Concerning any Domestic violence against their mother. San Francisco county Social Services and their county worker's, Alajandra Calderon, and Geraldine Ayerdis, refused to allow the plaintiff any visitation with his children throughout the 11 months in foster care. Under the supervision of the state.

The San Francisco county worker's Alajandra Calderon, and later Geraldine Ayerdis, began fabricating false evidence to the juvenile court in order to keep the plaintiff children under the supervision of the state. Although the plaintiff has never been accused of harming his children, San Francisco county worker's fabricated allegations that the plaintiff was a threat and danger to his children in order to place a restraining order between the plaintiff and the plaintiff children. However that restraining order was never served on the plaintiff in 2015. Although the plaintiff was not charged or convicted of any alleged domestic violence. The plaintiff has never been accused of harming his children, San Francisco county Social Services refused to provide reunification services to the plaintiff.
The plaintiff children were returned to their mother, the plaintiff fiancé, in December of 2015. The plaintiff children were home, enjoying family life, attending daycare, and

attending church services.
San Francisco county Social Services closed the plaintiff children's case on April 14, 2016.

However the plaintiff children's Godmother Linda Golden, wanted the plaintiff children in her home for monetary gain. Linda Golden contacted San Francisco county worker Geraldine Ayerdis, on the date of April 15, 2016, with the malicious lie that the plaintiff Children's Mother, Theresa Martinez was text messaging the plaintiff while in San Francisco juvenile court, on the date of April 14, 2016. This fabricated lie of Linda Golden,
Led to the San Francisco county worker Geraldine Ayerdis, going to the home of the plaintiff children, un announced and without a warrant or permission on the date of April 18, 2016. The San Francisco county worker made a warrantless seizure of the plaintiff children on the date of April 19, 2016.
The plaintiff children were placed in the home of Linda Golden. The plaintiff and the mother of the children, Theresa Martinez, do not have any restraining orders that prevent them from having communication. The plaintiff and the mother of the plaintiff children, were not text messaging each other on the date of April 14, 2016, this allegation was fabricated and false.

San Francisco county Social Services placed the plaintiff children under the supervision of the state a second time and began fabricating false evidence to the juvenile court. San Francisco county worker Geraldine Ayerdis, fabricated evidence of Domestic violence on the date of April 19, 2016, the date the plaintiff children were removed from their home. There was not any Domestic violence occurring in the home of the plaintiff children on the date of April 18, or April 19, 2016. The plaintiff children have never witnessed any Domestic violence between the plaintiff and their mother. San Francisco county worker's Geraldine Ayerdis, and Danielle Mendoza, fabricated false allegations of Domestic violence to the juvenile court. Falsely alleging that the plaintiff son has witnessed the plaintiff push the mother ( Theresa Martinez) to the floor.
This is false, the mother was studying Martial Arts at Team Brewers Kenpo Karate, in Hayward, Ca. In 2014. The plaintiff and the mother ( Theresa Martinez) would practice the Jiu Jitsu grappling techniques at home in the presence of their children. The plaintiff has practice Martial Arts for several years, and was instructing the children and the mother in Self-defense. Furthermore the plaintiff advertises on a Website called Thumtack, as a Martial Arts Instructor. The plaintiff children have never witnessed any Domestic violence concerning the plaintiff and the children's mother.

Due to the fact the plaintiff attorney Amanda Fisher successfully argued in San Francisco juvenile court, that the plaintiff children juvenile case belonged in San Mateo county not San Francisco county, due to the fact that the plaintiff children lived in San Mateo county not San Francisco county. The plaintiff children juvenile case was transferred to San Mateo county juvenile court on August 31, 2016.

The San Mateo county worker's chose to follow the behavior of the San Francisco county worker's, presenting false evidence to the juvenile court. In order to keep the plaintiff children under the supervision of the State.  And deny the plaintiff any visitation with his children.  And cause the breakup of a Natural Family.

Beltran v. Santa Clara County. 514 F.3d 906, ( 9th Cir. 2008)

Croft v. Westmoreland County Children and youth services. 103 F.3d 1123(3d Cir. 1997) Holding that " a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse.

Good v. Dauphin County Social Services. For Children and youth, 891 F.2d 1087, ( 3d Cir. 1989) Physical entry into the home is the chief evil against which the Fourth Amendment is directed, " the court explained, while adding: " it is a basic principle of the Fourth Amendment law ' that searches and seizures inside a home without a warrant are presumptively unreasonable. "

Kelson v. Springfield, 767 F 2d 651, ( 9th Cir. 1985)  " Supreme Court and Ninth Circuit precedent established that a parent has a constitutionally protected liberty interest in the companionship and society of his or her child. The state's interference with that liberty interest without due process of law is remediable under Section 1983."

Case 3:17-cv-05241-EMC   Document 1   Filed 09/13/17   Page 10 of 64

42 U.S.C. 1983 (2)

Deprivation of civil rights under the color of law.

States in part. " Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or   the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

The FOURTH Amendment Right of the United States Constitution. States". The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon provable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Six Amendment Right of the United States Constitution States." In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and Cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense.

The FOURTEENTH Amendment Right of the United States Constitution. States." All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States: nor shall any state deprive any person of life, liberty, or property, without due process of law: nor deny to any person within its jurisdiction the equal protection of the laws."

Deprivation of Civil Rights TITLE 42
                SECTION 1983.

San Mateo County Social Worker Michael Sullivan, MD58, filed a Disposition Report in San Mateo County Juvenile Court.
Dated November 21, 2016. This report was written with malicious intent. This report was knowingly written with false allegations that the plaintiff sexually abused his daughter. At no time during the time Michael Sullivan, was the primary case worker, was the plaintiff or Theresa Martinez, Mother of the plaintiff Children. Questioned concerning any allegations of sexual abuse. At no time prior to writing and filing the November 21, 2016. Disposition Report. Was the plaintiff or the mother of the plaintiff children, questioned. The San Francisco county worker Danielle Mendoza, and Linda Golden, the caretaker and Godmother of the plaintiff children fabricated this false allegation when the plaintiff case was transferred from San Francisco county juvenile court to San Mateo county juvenile court, on the date of August 31, 2016. At no time while the plaintiff children's case was in San Francisco county juvenile court, was there any allegations of sexual abuse concerning the plaintiff.  This alleged sexual abuse allegedly occurred in April of 2016.
Although no evidence was presented in court that the plaintiff had sexually abused his daughter.  No witness was presented in court accusing the plaintiff of sexually abusing his daughter. No witness was presented in court to be questioned concerning allegations that the plaintiff had sexually abused his daughter. The San Mateo county Social Worker Disposition Report of November 21, 2016, written by social worker Michael Sullivan, was the only document that accused the plaintiff of sexually abusing his daughter.
The San Mateo county worker, Michael Sullivan, was told by the San Francisco county worker Danielle Mendoza, that the plaintiff had sexually abused his daughter in September of 2016.  The plaintiff children juvenile case was transferred from San Francisco county juvenile court to San Mateo county juvenile court on August 31, 2016.  On the date of September 15, 2016, there are about San Francisco county worker Danielle Mendoza, filed a police report with the Brisbane police department alleging that the plaintiff had sexually abused his daughter. Although prior to transferring the plaintiff children juvenile case from San Francisco county, this allegation of sexual abuse was not made. This false allegation of sexual abuse was made in order to influence and prevent the dismissal of the plaintiff children juvenile case in San Mateo county. The Brisbane police department contacted the plaintiff, on the date of October 21, 2016, there or about.  And questioned the plaintiff concerning the allegations of sexual abuse. The Brisbane police department filed a complaint with the San Mateo county District Attorneys office.   The plaintiff was not

arrested or charged with any crime.  Prior to this, the caseworker contacted the plaintiff, for a routine interview due to the plaintiff, juvenile case was newly transferred. The plaintiff met

with the San Mateo county worker on the date of October 19, 2016. At no time during this meeting did the San Mateo county worker mention any allegations of sexual abuse concerning the plaintiff daughter.

San Mateo county worker Michael Sullivan, met with Brisbane police officer Malone, and the San Mateo county Assistant district attorney, and Jasmine Reyes, ( step daughter in the plaintiff previous relationship). And Linda and Steve Golden, caretakers, and Godmother of the plaintiff children, on the date of October 19, 2016. The same date the social worker met with the plaintiff. The San Francisco county worker Danielle Mendoza, gave San Mateo county worker Michael Sullivan, Jasmine Reyes contact information. Jasmine Reyes was attempting to fabricate she was sexually abused by the plaintiff as a teenager. Although prior to this interview on October 19, 2016, Jasmine Reyes had never made any allegations of sexual abuse concerning the plaintiff.

Jasmine Reyes has been used by Alameda county social worker's to fabricate false statements against the plaintiff in 2011. fabricated false statements were presented in an Alameda county social worker's report in December of 2011, concerning termination of reunification services of the plaintiff first born Son and Daughter. Linda and Steve Golden fabricated statements that the plaintiff daughter was being sexual towards her brother and sister, and that the plaintiff had sexually abused his Daughter ! Linda and Steve Golden also stated that the plaintiff parental rights and the parental rights of the children's mother should be terminated. Linda and Steve Golden, stated that they desired to adopt the plaintiff children.

Prior to this Linda Golden made false statements to San Francisco county Social Worker Geraldine Ayerdis, after the plaintiff children's 2015, juvenile case was closed on April 14, 2016. Linda Golden fabricated statements against the plaintiff and the children's mother, caused the warrantless removal of the plaintiff children by San Francisco county Social Services on the date of April 19, 2016.

The plaintiff children were placed in the home of Linda Golden.

At no time was Linda and Steve Golden, or Jasmine Reyes presented in a court of law to be questioned concerning any allegations of sexual abuse concerning the plaintiff.

The San Mateo county juvenile court judicial officer Diaz, Marta S, admitted the San Mateo county Disposition Report of November 21, 2016, as evidence. Violating the plaintiff, Fourth, and Six, and Fourteenth Amendment Rights of the United States Constitution. Although the plaintiff has never sexually abused his daughter, and clearly stated that the allegations of sexual abuse were false. The San Mateo county juvenile court and San Mateo county Social Worker Michael Sullivan, decided that the plaintiff sexually abused his daughter. The November 21, 2016, Disposition Report of San Mateo county worker Michael Sullivan, stated that the plaintiff children could not be returned home due to the possibility of being sexually abused by the plaintiff. The next San Mateo county worker was Karla Stehl, MD25,

Karla Stehl, became the primary worker in January of 2017. Karla Stehl, refuses to have any contact with the plaintiff. Karla Stehl, stated that due to the sexual abuse allegations against the plaintiff she could not have any contact with the plaintiff, and her agency could not provide any reunification services to the plaintiff, and this was a criminal matter. The San Mateo county worker stated this to the plaintiff in February of 2017.  The plaintiff has been greatly harmed by the fabricated allegations of sexual abuse . San Mateo County Worker's Michael Sullivan, and Karla Stehl knowingly presented false allegations of sexual abuse against the plaintiff in order to keep the plaintiff children under the supervision of the state, and prevent the plaintiff children juvenile case from being dismissed. This fabricated allegations of sexual abuse could cause the plaintiff parental rights to be terminated. And the plaintiff children being placed for adoption.  San Mateo County Worker Michael Sullivan, prior to meeting with the Brisbane police and the San Mateo county assistant district attorney on October 19, 2016, never questioned the plaintiff as to the validity of the allegations of sexual abuse. San Mateo county worker Michael Sullivan, never question the Mother of the plaintiff children Theresa Martinez, concerning any allegations of sexual abuse concerning the plaintiff.  San Mateo county worker Michael Sullivan, participated in providing false evidence that plaintiff had sexually abused his daughter in an attempt to cause the arrest of the plaintiff. The  Fourth Amendment Right of the United States Constitution States."! The Right of the people to be secure in their persons, houses papers, and effects, against unreasonable search and seizures, shall not be violated, and no warrant shall issue, but upon provable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the property and the persons or things to be seized."

The Six Amendment Right of the United States Constitution States " in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and Cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense "  Statutory right to competent counsel: " All parties who are represented by counsel at a Dependacy proceedings shall be entitled to competent counsel." (Welf. & Inst. Code 317.5) The right to counsel protects the fundamental right to a fair trial.( Gideon v. Wainwright ( 1963) 372 U. S. 335, 83 S. CT. 792, 9 L. Ed. 2d 799.)

The Fourteenth Amendment Right of the United States Constitution States. "  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States: Nor

shall any State deprive any person of life, liberty, or property with out due process of law: Nor deny to any person within its jurisdiction the equal protection of the laws."

In accordance to the Due Process Clause of the Fourteenth Amendment of the United States Constitution. I have the right to effective assistance of counsel. Lassiter v. Department of Social Services. ( 1981) 452 U. S. 18,31-32

In re Christina P. ( 1985) 175 Cal. App. 3d 115, 129; In re Christina H. ( 1986) 182 Cal. App. 3d 47, 50 right extended to retained counsel; In re Emilye A. ( 1992) 9 Cal. App. 4th 1695, 1711; In re O. S. ( 2002) 102 Cal. App. 4th 1402, 1407.)

Roska v. Peterson, 328 F. 3d 1230, ( 10 Cir. 2003)

Holding no immunity for caseworkers who entered a home lacking either exigency or a warrant, and finding constitutional protection in the right to maintain a family relationship, Court held that : " the law is now clearly established that, absent provable cause and a warrant or exigent circumstances, social workers may not enter an individual's home for the purpose of taking a child into protective custody."

The plaintiff has never sexually abused his daughter. These allegations are false and should have been treated as allegations not proven evidence or fact. The plaintiff provided the San Mateo county juvenile court with a Sworn Declaration under the penalty of perjury denying ever having sexually abusing his daughter. Furthermore the plaintiff has never made threats to kill any staff members at the Hamilton family shelter in San Francisco, Ca. As falsely stated in the November 21, 2016, Disposition Report of San Mateo county worker Michael Sullivan. False evidence to the juvenile court.

The San Mateo county worker's Michael Sullivan, and Karla Stehl, have provided the San Mateo county juvenile court with false evidence, and allegations of Domestic violence concerning the plaintiff and the Mother of the plaintiff children. San Mateo county worker's Michael Sullivan, and Karla Stehl, presented false evidence that the plaintiff children witnessed Domestic violence between the plaintiff and the Mother of the plaintiff children. The plaintiff at all times had a loving relationship with his children. A loving parent child bond. At all times the plaintiff had and continues to have a loving supportive relationship with the mother of the plaintiff children. The plaintiff is in possession of video documentation concerning April 18th, and 19th, 2016, the intrusive home visit and warrantless removal of the plaintiff children. There was no Domestic violence that the plaintiff children witnessed. This was a fabricated and false allegation made by San Francisco county worker Geraldine Ayerdis. The San Mateo county worker's knowingly presented false evidence to the San Mateo juvenile court in order to keep the plaintiff children under the supervision of the state. And cause the arrest of the plaintiff without due process of the law and the equal protection of the law.

Therefore the plaintiff files this lawsuit for civil rights violations concerning the plaintiff Fourth, and Six, and Fourteenth Amendment Rights of the United States Constitution.

The Defendants behavior was malicious with intent to cause the plaintiff harm.  The Defendants fabricated allegations of sexual abuse in order to cause the plaintiff arrest. The plaintiff seeks damages in the amount
Of $ 50 Million dollars due to the severity of the injuries the plaintiff has sustained. Due to the behavior of the San Mateo county worker's Michael Sullivan, and Karla Stehl, according to the proof.

Carl Anthony Grimes
P.O. Box 1596.
Millbrae, Ca. 94030
650-720-0293
anthonygrimes318@yahoo.com

Deprivation of Civil Rights Title 42
Section 1983.

CAUSES of ACTIONS

1st Cause of Action. Violating the plaintiff Fourth Amendment Right of the United States Constitution. San Mateo county worker Michael Sullivan.

2nd Cause of Action. Violating the plaintiff Six Amendment Right of the United States Constitution. San Mateo county worker Michael Sullivan .

3rd Cause of Action. Violating the plaintiff Fourteenth Amendment Right of the United States Constitution. San Mateo county worker Michael Sullivan.

4th Cause of Action. Violating the plaintiff Fourth Amendment Right of the United States Constitution. San Mateo county worker Karla Stehl.

5th Cause of Action. Violating the plaintiff Six Amendment Right of the United States Constitution. San Mateo county worker Karla Stehl.

6th Cause of Action. Violating the plaintiff
Fourteenth Amendment Right of the United States Constitution. San Mateo county worker Karla Stehl.

Deprivation of Civil Rights Title 42
Section 1983.

## CAUSES of ACTIONS

1st Cause of Action. Violating the plaintiff Fourth Amendment Right of the United States Constitution. San Mateo county worker Michael Sullivan.

2nd Cause of Action. Violating the plaintiff Six Amendment Right of the United States Constitution. San Mateo county worker Michael Sullivan .

3rd Cause of Action. Violating the plaintiff Fourteenth Amendment Right of the United States Constitution. San Mateo county worker Michael Sullivan.

4th Cause of Action. Violating the plaintiff Fourth Amendment Right of the United States Constitution. San Mateo county worker Karla Stehl.

5th Cause of Action. Violating the plaintiff Six Amendment Right of the United States Constitution. San Mateo county worker Karla Stehl.

6th Cause of Action. Violating the plaintiff
Fourteenth Amendment Right of the United States Constitution. San Mateo county worker Karla Stehl.

Case Number: 16-JD-0173



**SUPERIOR COURT OF SAN MATEO COUNTY**
222 Paul Scannell Drive
San Mateo, CA 9440
www.sanmateocourt.org

## Minute Order

| In the Matter of: Ariel Antonie Martinez Grimes | 16-JD-0173 |
| --- | --- |
| | November 21, 2016  2:00 PM |
| | Disposition |

**Judicial Officer:** Diaz, Marta S
**Courtroom Clerk:** ; Tammy Magill
**Court Officer:** Carol Stormberg

**Location:** Courtroom B-YSC
**Courtroom Reporter:** Janice Scott

**Parties Present**

| | |
| --- | --- |
| Friedman, Sherrie S. | Private Defender |
| Grimes, Carl A | Father |
| Martinez, Maria | Mother |
| Miller, Bonnie | Private Defender |
| YOLKEN, KATHRYN | Private Defender |

**Exhibits**

**Minutes**

*Journals*
- Notice has been given as required by law.
Also present: Social Worker Michael Sullivan
The Court has read, considered, and admitted into evidence the Children and Family Services social study report dated: 11/21/16
Findings and Orders after Dispositional Hearing (Welf. & Inst. Code 361 et seq.) adopted.
Dispositional Attachment: Removal from Custodial Parent-Placement with Nonparent (Welf. & Inst. Code 361, 361.2) adopted.
Visitation Attachment: Parent, Legal Guardian, Indian Custodian, other important-person adopted.
Sibling Attachment: Contact and Placement adopted.
Additional Court Orders adopted
The court finds/orders: Department has discretion to increase visits for parents.
All prior orders, not in conflict, remain in full force and effect.

*Events:*
- The child is declared to be a dependent child of the court.; Minor: Grimes, Ariel Antonie Martinez
- Courtroom Clerk Juvenile Worksheet

*Judgment:*

**Future Hearings and Vacated Hearings**

February 28, 2017 2:00 PM Interim Review
Diaz, Marta S

1

Case Number: 16-JD-0173

May 09, 2017 2:00 PM FR 6M Review
Diaz, Marta S

Case Number: 16-JD-0172



**SUPERIOR COURT OF SAN MATEO COUNTY**
222 Paul Scannell Drive
San Mateo, CA 9440
www.sanmateocourt.org

## Minute Order

| In the Matter of: Anthony Alfredo Grimes | 16-JD-0172 |
|---|---|
| | February 28, 2017  2:00 PM |
| Case Type: Dependency | Interim Review |

**Judicial Officer:** <u>Diaz, Marta S</u>
**Courtroom Clerk:** <u>Tammy Magill; Kevin Duerre</u>
**Court Officer:** <u>Diana Damrosch</u>

**Location:** <u>Courtroom B-YSC</u>
**Courtroom Reporter:** <u>Janice Scott</u>

---

**Parties Present**

| Grimes, Carl A | Father |
|---|---|
| Martinez, Maria | Mother |
| San Mateo County Human Service Agency-Children and Family Services | Petitioner |
| Stehl, Karla | Social Worker |
| YOLKEN, KATHRYN | Private Defender |

---

**Exhibits**

---

**Minutes**

*Journals*

- Also present: CASA Program representative.

Notice has been given as required by law.

The Court has read, considered, and admitted into evidence the Children and Family Services social study report dated: 2/28/17.

Hearing previously scheduled for FR6M Review set 5/09/17 at 2:00 in Dept. 5 is confirmed.

All prior orders, not in conflict, remain in full force and effect.

*Events:*

- The child continues to be a dependent child of the court.; Minor: Grimes, Anthony Alfredo
- Courtroom Clerk Juvenile Worksheet

*Judgment:*

---

**Future Hearings and Vacated Hearings**

May 09, 2017 2:00 PM FR 6M Review
Scott, Janice
Diaz, Marta S
Magill, Tammy
Courtroom B-YSC

1

ENDORSED FILED
SAN MATEO COUNTY
MAR 2 7 2017
Clerk of the Superior Court
By TRINIDAD H. TRANCE
DEPUTY CLERK

Too, Judicial Officer Diaz, Marta S.
Case 16-JD-0173. Courtroom B-YSC
In the matter of Ariel Antonie Martinez Grimes.

1. In accordance to the Due Process Clause of the 14th Amendment of the United States Constitution. I have a right to effective assistance of counsel. Lassiter v. Department of Social Services. ( 1981) 452 U. S. 18, 31-32
In re Christina P. (1985) 175 Cal. App. 3d 115, 129; In re Christina H. ( 1986) 182 Cal. App. 3d 47, 50 right to extended to retain counsel; In re Emilye A. )1992) 9 Cal.App. 4th 1695, 1711; In re O.S. (2002) 102 Cal.App.4th 1402, 1407.)

2. Statutory right to competent counsel:
"All parties who are represented by counsel at Dependacy proceedings shall be entitled to competent counsel." ( Welfare & Institution Code 317.5)
See also California Rules of Court, rule 5.660(d) Concerning competent counsel.

In September of 2016, Attorney Bonie L Miller was assigned to represent me in Juvenile proceedings in the Matter of Ariel Antonie Martinez Grimes. 16.JD-0173.
Since that time a breakdown in communication has occurred and unwillingness to provide competent legal representation has occurred on the part of Attorney Bonie L Miller.
The failure of Attorney Bonie L Miller to challenge the November 21, 2016. Disposition Report, concerning the fabricated false allegations of sexual abuse, allegedly made by my Daughter. And Fabricated false Domestic violence allegedly witnessed by my children at the time of their warrantless removal. And the failure to object or challenge the false statements of abuse and Domestic violence allegations allegedly made by my Children, contained in the February 28, 2017 Interim Review Report. Has greatly prejudice this court against my ability to receive a fair hearing.
Furthermore Attorney Bonie Miller, never raised the issue concerning the fact that Social Services stated in the     / 17 Disposition Report that I would receive reunification Services. Too date I have not been provided any services. None of my accusers have been presented in a court of Law to be questioned.
I ask the court to grant me a hearing concerning my Attorney failure too provide competent counsel.

Carl Anthony Grimes    3/27/17
P.O. Box 1596.

Millbrae, California
94030.



Anthony Grimes, Nov 24

Thumbtack reminder:  Dolly B. still wants quotes thmtk.com/31HcGGeW. 2 quotes have been submitted.

Friday 5:43 PM

Thumbtack reminder:  Kathryn F. still wants quotes thmtk.com/HnkuH8BE. 1 quote has been submitted.

Yesterday 9:32 AM

Thumbtack reminder:  Erica B. still wants quotes thmtk.com/9myNk7l9. 2 quotes have been submitted.

Today 7:17 PM

Thumbtack reminder:  Sammie M. still wants quotes

## A.G. Self- Defense For The Street
### Personal Fitness Trainer




**Techniques Taught:**
strikes • kicks
joint locks • throwing
chokes • grappling



We teach self-defense, emphasizing techniques for the street.
We give special emphasis on women's self-defense techniques. You will fear no one!

Men, Women, Teenagers, and Children all are welcome
Get in Shape, Great Fun!



**Anthony Grimes, Certified Instructor**
**Theresa Martinez, Assistant Certified Instructor**

AnthonyGrimes318@yahoo.com • (650) 720-0293

---

## A.G. Self- Defense For The Street
### Personal Fitness Trainer

**Techniques Taught:**
strikes • kicks
joint locks • throwing
chokes • grappling




We teach self-defense, emphasizing techniques for the street.
We give special emphasis on women's self-defense techniques. You will fear no one!

Men, Women, Teenagers, and Children all are welcome
Get in Shape, Great Fun!




**Anthony Grimes, Certified Instructor**
**Theresa Martinez, Assistant Certified Instructor**

AnthonyGrimes318@yahoo.com • (650) 720-0293

---

## A.G. Self- Defense For The Street
### Personal Fitness Trainer

**Techniques Taught:**
strikes • kicks
joint locks • throwing
chokes • grappling




We teach self-defense, emphasizing techniques for the street.
We give special emphasis on women's self-defense techniques. You will fear no one!

Men, Women, Teenagers, and Children all are welcome
Get in Shape, Great Fun!




**Anthony Grimes, Certified Instructor**
**Theresa Martinez, Assistant Certified Instructor**

AnthonyGrimes318@yahoo.com • (650) 720-0293

---

## A.G. Self- Defense For The Street
### Personal Fitness Trainer

**Techniques Taught:**
strikes • kicks
joint locks • throwing
chokes • grappling




We teach self-defense, emphasizing techniques for the street.
We give special emphasis on women's self-defense techniques. You will fear no one!

Men, Women, Teenagers, and Children all are welcome
Get in Shape, Great Fun!




**Anthony Grimes, Certified Instructor**
**Theresa Martinez, Assistant Certified Instructor**

AnthonyGrimes318@yahoo.com • (650) 720-0293



Anthony Grimes

JULY 13, 2014

Too Judicial Officer. Diaz Marta S.

Case 16- JD- 0171

Courtroom B-YSC

In the matter of Anthessa Theresa Martinez Grimes.

JV-180 attachment

On the date of April 5th 2016,  during my weekly visit with my children.  My daughter Anthessa disclosed she had been hospitalized the prior week. Due to hearing Voices. My daughter stated she could get anyone in trouble because the voices were telling her what to say and do !

My visit was supervised by Alternative family Counselor Ben.  Ben also was present when my daughter made this statement.

State employees who withholds a child from his or her family may infringe on a family's liberty of familial association. Social worker's could not deliberately remove children from their parents and place them with foster caregivers when officials reasonably should have known such an action would cause harm to the child's mental health or physical Health. KH. THROUGH MURPHY v. Morgan ( 7th Cir. 1990).

I Swear this statement to be true under the laws of the state of California.

Maria Theresa Martinez
203 Lake Street Brisbane
California. 94005.
April 12, 2016.

Too Judicial Officer Diaz Marta S.

Case 16-JD-0171

Case 16-JD- 0172

Case 16-JD-0173

Courtroom B-YSC

In the matter of Anthessa Theresa Martinez Grimes. In the matter of Anthony-Alfredo Martinez Grimes. In the matter of
Ariel-Antonie Martinez Grimes.

JV-180. Request to present new evidence  to change an order.
Concerning the allegations of sexual abuse in the November 21, 2016. Disposition Report.
The evidence I will present concerns the hospitalization of my daughter Anthessa.
The nature of the hospitalization.
Statements made by my daughter that supports I never sexually abused my Daughter.
I wish to address the fact that I was granted therapeutic visitation with my children, in  San Francisco juvenile court, in 2016.
However I have not had any visitation with my children.
Furthermore I wish to address the fact that the November 21, 2016, Disposition Report.
Filed in San Mateo county juvenile court.  Stated I was to be provided with reunification Services. To date I have not been provided with any Services.
I have a Constitutional Right to have visitation with my children.
Ward v. San Jose ( 9th Cir. 1992)
Troxel v. Granville. 530 U.S. 57 ( 2000).

This JV- 180 request is in the best interest of my children. I have video evidence supporting the loving emotional bond I have with my children.

Carl Anthony Grimes
P. O. Box 1596
Millbrae Ca. 94030
April 12, 2017.

**JV-220(A)** | **Physician's Statement— Attachment** | Case Number:

This form must be completed and signed by the prescribing physician. Read Form JV-217-INFO, *Guide to Psychotropic Medication Forms,* for more information about the required forms and the application process.

**(1)** Information about the child *(name):* Grimes, Anthessa

Date of birth: 01/09/2011    Current height: 3'11    Current weight: 45lb

Gender: female    Ethnicity: African American

**(2)** Type of request:

a. ☒ An initial request to administer psychotropic medication to this child

b. ☐ A request to start a new medication or to increase the maximum dose of a previously approved medication

c. ☐ A request to continue psychotropic medication the child is currently taking

**(3)** ☒ This application is made during an emergency situation as defined in California Rules of Court, rule 5.640(g). The emergency circumstances requiring the temporary administration of psychotropic medication pending the court's decision on this application are:

Patient is admitted to acute psychiatric unit due to danger to self and others

**(4)** Prescribing physician:

a. Name: Alex Smirnoff, MD      License number: A87293

b. Address: 2740 Grant St, Concord, CA 94520

c. Phone numbers: 925-674-4187

d. Medical specialty of prescribing physician:

☒ Child/adolescent psychiatry    ☒ General psychiatry    ☐ Family practice/GP    ☐ Pediatrics

☐ Other *(specify):*

e. How long have you been treating the child? _____ years _____ months 2 days

f. In what capacity have you been treating the child (e.g., treating psychiatrist, treating pediatrician)? treating child and adolescent psychiatrist

**(5)** This request is based on a face-to-face clinical evaluation of the child by:

a. ☒ the prescribing physician on *(date):* 3/30/2017

b. ☐ other *(provide name, professional status, and date of evaluation):*

**(6)** Information about child provided to the prescribing physician by *(check all that apply):*

☒ child    ☒ caregiver    ☐ teacher    ☒ social worker    ☐ probation officer    ☐ parent

☐ public health nurse    ☐ tribe

☐ records *(specify):*

☐ other *(specify):*

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2016, Mandatory Form
Welfare and Institutions Code, §§ 369.5; 739.3
California Rules of Court, rule 5.640

**Physician's Statement—Attachment**

JV-220(A), Page 1 of 6 →

Child's name: Grimes, Anthessa

Case Number:

(7) Provide to the court your assessment of the child's overall mental health.    ☐ I don't know.
Acute PTSD with psychotic symptoms

(8) Describe the child's symptoms, including duration, and the child's treatment plan.    ☐ I don't know.
Mood liability, Irritability, command auditory hallucinations, secondary homicidal and suicidal ideation
Patient currently requiring inpatient psychiatric treatment with group individual and milieu therapies as well as
psychopharmacological management with antipsychotic medication Risperdal.

(9) Describe the child's response to any current psychotropic medication.    ☐ I don't know.
not applicable

(10) a. Have nonpharmacological treatment alternatives to the proposed medications been tried in the last six months?
☒ Yes    ☐ No    ☐ I don't know.

b. If yes, describe the treatment and the child's response. If no, explain why not.
Foster home placement



Child's name: Grimes, Anthessa

Case Number:

(11) a. Have other pharmacological treatment alternatives to the proposed medications been tried in the last six months?

☒ Yes    ☐ No    ☐ I don't know.

b. If yes, describe the treatment and the child's response. If no, explain why not.

Individual therapy

c. List the psychotropic medications that you know were taken by the child in the past and the reason or reasons these were stopped if the reasons are known to you.

| Medication name (generic or brand) | Reason for stopping |
|---|---|
| none | |

(12) Describe the symptoms not alleviated or ameliorated by other current or past treatment efforts.    ☐ I don't know.

suicidal and homicidal ideation, acting out trauma

(13) What symptoms are expected to improve with the medication being prescribed?

Agitation, homicidality, psychotic symptoms

Child's name: Grimes, Anthessa

Case Number:

(14) Diagnoses from *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)*; inclusion of alpha numeric codes is optional.

F 43.10 posttraumatic stress disorder
F 29 unspecified psychotic disorder

(15) Relevant medical history *(describe, specifying significant medical conditions, all current nonpsychotropic medications, date of last physical examination, and any recent abnormal laboratory results)*:

☐ I don't know.
H&P 3/30/2017 : Eczema

(16) a. ☒ All essential laboratory tests were performed.

b. ☐ All essential laboratory tests were not performed *(explain what laboratory tests were not done and why)*.

(17) a. ☐ The child was told in an age-appropriate manner about the recommended medications, the anticipated benefits, the possible side effects, and that a request to the court for permission to begin and/or continue the medication will be made and that he or she may oppose the request. The child's response was

☒ agreeable    ☐ not agreeable

Briefly describe child's response: agrees to take medicine as prescribed

b. ☐ The child has not been informed of this request, the recommended medications, their anticipated benefits, and their possible adverse reactions because:

(1) ☐ the child lacks the capacity to provide a response *(explain)*: _____

(2) ☐ other *(explain)*: _____

Child's name: Grimes, Anthessa

Case Number:

(18) a. ☒ The child's present caregiver was informed of this request, the recommended medications, the anticipated benefits, and the possible adverse reactions which include:
agreeable and supportive

b.     The caregiver's response was  ☒ agreeable     ☐ other *(explain)*:

(19) Therapeutic services, other than medication, in which the child is enrolled in or is recommended to participate during the next six months *(check all that apply; include frequency for therapy)*:

a. ☒ Group therapy: on the unit                    b. ☒ Individual therapy: outpatient
c. ☐ Milieu therapy *(explain)*:
d. ☐ Therapeutic Behavioral Services (TBS)
e. ☐ Therapy for children on the autism spectrum
f. ☐ Art therapy
g. ☐ Cognitive behavioral therapy (CBT)
h. ☐ Wraparound services
i. ☐ American Indian/Alaska Native healing and cultural traditions
j. ☐ Speech therapy
k. ☐ In Home Behavioral Services (IHBS)
l. ☐ Other modality *(explain)*:

(20) **Mandatory Information Attached:** Significant side effects, warnings/contraindications, drug interactions (including those with continuing psychotropic medication and all nonpsychotropic medication currently taken by the child), and withdrawal symptoms for each recommended medication are included in the attached material.

(21) Additional information regarding medication treatment plan and follow up:

Child's name: Grimes, Anthessa

Case Number:

**22** List all psychotropic medications currently administered that you propose to continue and all psychotropic medications you propose to begin administering. Mark each psychotropic medication as New (N) or Continuing (C).

| Medication name (generic/brand) and class, and symptoms targeted by each medication's anticipated benefit to child | C or N | Maximum total mg/day | Treatment duration* | Administration schedule<br>• Initial and target schedule for new medication<br>• Current schedule for continuing medication<br>• Provide mg/dose and # of doses/day<br>• If PRN, provide conditions and parameters for use |
|---|---|---|---|---|
| Med: Risperidal<br>Class: antipsychotic<br>Targets: halluciantions | N | 2mg | 6 months | 0.25mg PO BID |
| Med: Zoloft<br>Class: antidepressant<br>Targets: PTSD | N | 200mg | 6 months | 25mg PO QAM |
| Med:<br>Class:<br>Targets: | | | | |
| Med:<br>Class:<br>Targets: | | | | |

*Authorization to administer the medication is limited to this time frame or six months from the date the order is issued, whichever occurs first.

**23** Other information about the prescribed medication that you want the court to know (e.g., why prescribing more than one medication in a class, why prescribing outside the approved range, or why prescribing medication not approved for a child of this age)

_____
_____
_____
_____
_____
_____
_____

**24** List all psychotropic medications currently administered that will be stopped if this application is granted.

| Medication name (generic or brand)<br>n/a | Reason for stopping | Stop immediately or over period of time? (specify, including time) |
|---|---|---|
| | | |
| | | |
| | | |

Date: 03/31/2017

Alex Smirnoff, MD
_____
*Type or print name of prescribing physician*

▶ _____
*Signature of prescribing physician*

**Physician's Statement—Attachment**

JV-220(A), Page 6 of 6

DECLARATION of CARL ANTHONY GRIMES

I declare the following concerning the San Mateo County Human Services Agency. Disposition Report Dated 11/21/16. Written by Michael Sullivan MD58 DSS N0 4053871

I declare under The penalty of perjury of The laws of the state of California, the 11/21/16. Disposition Report contains false allegations and statements. I have never sexually abused my Daughter Anthessa, or any of my children. I have never emotionally or physically abused any of my children. My children have never witnessed me striking or pushing their mother. I have not physically or emotionally abused my children's mother, Maria Theresa Martinez. Theresa Martinez is not in fear for her life when she is around me. We have a good peaceful relationship. My children are not afraid of me. My children love me and I love my children. I have never been convicted of Domestic violence concerning any arrests. I have never been found guilty in any court of law for assault. I do not suffer from any mental health issues. I have never physically or emotionally abused my Son Antonio, or my Daughter Angelina. My son Antonio does not hate me. My son Antonio loves me and is emotionally bonded to his mother and father.

I have never sexually or emotionally or physically abused my stepdaughter Jasmine Reyes. I did not abuse my stepdaughter mother. I have never threatened or attempted to intimidate Steve Golden or Linda Golden. Steve Golden has never seen me angry. Steve Golden has never seen me make an angry facial expression. Linda and Steve Golden are not being truthful. My daughter Anthessa, and my son Anthony do not behave like boyfriends and girlfriends. Linda and Steve Golden stated that my parental rights and Theresa Martinez parental rights should be terminated. Linda and Steve Golden want to adopt our children for monetary gain only. This is a case of fraud being committed by Linda and Steve Golden. Linda Golden fabricated that Theresa Martinez and I were text messaging each other at my children's case dismissal on April 14, 2016., San Francisco Superior Court. Although my children had been home living with their mother since December of 2015. San Francisco County Worker Geraldine Ayerdis, came to my children's home un announced and without having a warrant began questioning and removed my children from their home. On the dates of April 18,2016, and April 19,2016.

On the date of April 20th, 2016, San Francisco County Worker Geraldine Ayerdis, demanded that Theresa Martinez, and the Brisbane Police meet at Theresa martinez home. The San Francisco county worker Geraldine Ayerdis. Demanded that theresa Martinez accompany her to Linda Golden, home. Theresa was forced to spend the night. Linda Golden was later presented in San Francisco Superior Court as a witness against theresa Martinez and

myself. Linda Golden testified allegedly about statements theresa Martinez made to her the night of April 20th, 2016, the night the San Francisco county worker Geraldine Ayerdis,

forced theresa Martinez to stay the night in Linda Golden home. Linda Golden was presented as a witness for San Francisco social services in July of 2016.

My children were placed in Linda Golden home after Linda Golden fabricated that theresa Martinez and I were text messaging in court on April 14, 2016. Although there is not any restraining order between Theresa Martinez and myself. The San Francisco county social worker's Geraldine Ayerdis, and Danielle Mendoza, used Linda Golden, false allegations of text messaging as a reason to place my children under the supervision of the state. My Children were placed in Linda Golden home.

Linda and Steve Golden are fabricating false allegations of sexual abuse against me. Linda and Steve Golden want me arrested because they are committing fraud against San Francisco county and San Mateo county for monetary gain. Linda and Steve Golden are trying to prevent me from filing a civil lawsuit for defamation and slander. Linda and Steve Golden stated their concerned for their safety. Linda and Steve Golden fabricated false statements and allegations in order to get our children for monetary gain. No other care giver has ever made statements concerning my children being sexual. My children never made any statements of being sexually abused or emotionally or physically being abused prior to their removal and being placed in Linda and Steve Golden home. Now 6 months after their removal from home April 19, 2016. Linda and Steve Golden are fabricating allegations of sexual abuse against me.

Pages 11, 12,13,14,15,16, 17, 18,19, 20,21,22,23, of the 11/21/16. Disposition Report. These are false, fabricating false allegations of Domestic Violence and sexual abuse, my children are not in fear of me. My children have a good loving relationship with both parents. I have videos and witnesses I can present as evidence.

Steve Golden has never heard that I was touching on my daughter sexually, and that I took her to the hospital because I blamed a stranger. Linda and Steve Golden are attempting to discredit me. I personally informed San Francisco county worker Alahandra Calderon, and Linda Golden, in April of 2015, my Daughter Anthessa claimed she was touched by a man while I was at work. I contacted Detective Tong of the Hayward police department in September of 2014. Theresa Martinez and I took our Daughter to children's hospital Oakland for an examination in September of 2014. Again this is a case of fraud being committed by Linda and Steve Golden. Linda Golden was named as my children's Godmother in October of 2014, after knowing her only 2 months !

Pages 3,5,6,7,8, of the 11/21/16. Disposition Report. Is false I do have Native American ancestry. The record concerning eviction is not accurate concerning evergreen ridge Apartments we did not owe any rent at the time of our voluntary departure. I have no knowledge of case CLj207690 for $16,540.00

I have never been accused of any emotional abuse or neglect of my children in April of 2014. This is false.

I have never been accused of sexual abuse of my Daughter Anthessa, or any of my children in August of 2015.

Concerning my record of arrest page 6, of the 11/21/16. Disposition Report. I was never cited by the Oakland police department for battery in 1991. Not true.

I never had a court case concerning battery in July of 1991, by the Oakland police department . This is false.

In 1994 I never pled to fighting / noise / offensive words. This is false.

Page 7, of the 11/21/2016, Disposition Report. Concerning my record of arrest is false. I was never arrested in July of 2007, by the Oakland police department. I do not have issues maintaining employment. Linda Golden, nor Steve Golden, have any personal knowledge of my employment history. Linda Golden is a licensed foster care provider in Alameda County. Linda Golden has adopted a child through Alameda County. Linda Golden receives monthly payments for that adopted child. Linda Golden is receiving monthly payments for the care of my children.Again this is a case of fraud started by Linda Golden on April 15, 2016. Linda Golden contacted San Francisco county worker Geraldine Ayerdis, And fabricated that Theresa Martinez, and myself were text messaging each other at the April 14,2016, case dismissal concerning my children. My children were removed from their home and placed in Linda and Steve Golden home through fraud.

I swear these statements to be true and I would testify to the same in a civil or criminal court of law.

Concerning the 11/21/16, Disposition Report filed in San Mateo County superior court., by San Mateo county human services county worker Michael Sullivan. I do not settle this matter I wish to contest this 11/2116, Disposition Report. These false allegations and statements cannot be proven at a trial in a court of law. I have never threatened a social worker with Violence. San Francisco County Social Worker's Geraldine Ayerdis, and Danielle Mendoza, have a history of fabricating false evidence against me. For example Linda Golden false statements of text messaging on April 15,2016. My children were removed from their home without a warrant and placed in Linda Golden home.

San Francisco County Worker Danielle Mendoza, contacted the Brisbane police department in September of 2016, with false allegations that I sexually abused my daughter. Danielle Mendoza, contacted my stepdaughter, Jasmine Reyes, through Alameda county social services. Jasmine Reyes, has a history of making false statements against me. Such as in December of 2011, Alameda County Social Services presented Jasmine Reyes false statements in a Social Worker's report addressed to the court. Jasmine Reyes never claimed she had been sexually abused by me !

Because I chose to exercise my constitutional rights concerning my children's warrantless removal and file a civil lawsuit against San Francisco County human services agency. Danielle Mendoza fabricated false statements that I sexually abused my daughter. And I have a history of threatening social worker's.

I wish to contest the 11/21/16 Disposition Report of San Mateo county human services agency.  This report is filed with false fabricated statements and allegations.

My children have a Mother and father that love their children. Our children love their parents. We have a constitutional Protective right to remain a family. Ward v. San Jose (9th Cir. 1992)

Weller  v. Dept of social services Baltimore (4th Cir. 1990)

JB v. Washington county (10th Cir. 1997)


Carl Anthony Grimes

12/19/16.

Anthonygrimes318@yahoo.com

(650)-720-0293

| Date of Protective Custody (Date of child physically removed by Social Worker or Probation Officer) 4/19/2016 | Detention Hearing (Child Detained) 04/21/2016 | Date Entered Foster Care (Date of Jurisdiction or 60 days after Protective Custody, whichever is /first) 06/19/2016 | Jurisdiction Hearing 08/03/2016 | Disposition Hearing 11/21/2016 | 6 Month Review (6 Months from Disposition Hearing) 05/21/2017 | 12 Month Review (12 Months from "Date Entered Foster Care") 06/19/2017 | 18 Month Review (18 Months from Date of Protective Custody) 12/19/2017 | 24 Month Review (24 Months from Date of Protective Custody) 06/19/2018 |
|---|---|---|---|---|---|---|---|---|

San Mateo County, Human Services Agency /
Children & Family Services
1 Davis Drive
Belmont, California 94002-3001
Michael Sullivan
(650) 802-7688
MD58
DSS No. 4053871

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN MATEO
222 Paul Scannell Drive, San Mateo, California 94402

## DISPOSITION REPORT

**Hearing Date**
11/21/2016

**Hearing Time**
02:00pm

**Dept./Room**
5

**Hearing Type/Subtype**
Disposition / 300,Detained;
Disposition / 300,Detained;
Disposition / 300,Detained

## IN THE MATTER OF

| Name | Date of Birth | Age | Sex | Court Number |
|---|---|---|---|---|
| Anthessa Theresa Grimes | 01/09/2011 | 5 | F | 16JD0171 |
| Anthony Alfredo Grimes | 11/15/2011 | 4 | M | 16JD0172 |
| Ariel Antonie Martinez Grimes | 12/31/2012 | 3 | F | 16JD0173 |

Confidential in accordance with Penal Code Section 11167.5 and/or WIC Sections 827 and 10850.

Disposition Report
11/21/2016

1

Anthessa Theresa Grimes, et al                                                              16JD0171

## CHILD(REN)'S WHEREABOUTS

All three of the children have been detained since 04/28/2016 and are together being cared for by the godparents in a confidential location.

## PARENTS/LEGAL GUARDIANS

| Name/ Birthdate | Address/ Phone | Relationship/ To Whom |
|---|---|---|
| Maria Martinez 01/30/1971 | 203 Lake St Brisbane, CA 94005-1716 (415) 940-1274 | Mother/ Anthessa T. |
| | | Mother/ Anthony A. Mother/ Ariel A. |
| Carl Grimes 12/27/1963 | 2949 Redwood Pkwy Vallejo, CA 94591-3636 (650) 720-0293 | Father/ Anthessa T. |
| | | Father/ Anthony A. Father/ Ariel A. |

## ATTORNEYS

| Name | Address/ Phone | Representing |
|---|---|---|
| Sherrie Friedman | 226 De Anza Blvd San Mateo, CA 94402-3913 (650) 678-2621 | Anthessa T. Grimes |
| | | Anthony A. Grimes Ariel A. Martinez Grimes |
| Kathryn Yolken | 333 Bradford St Ste. 170 Redwood City, CA 94063-1572 (650) 728-2662 | Maria Martinez |
| Bonnie Miller | 1313 Laurel St Ste. 114 San Carlos, CA 94070-5043 (650) 595-0444 | Carl Grimes |

Anthessa Theresa Grimes, et al                                                                          16JD0171

## INDIAN CHILD WELFARE ACT STATUS

The Indian Child Welfare Act does not apply.
On September 7, 2016 an ICWA 20 was filed in San Mateo Juvenile Court indicating the mother and father do not have Native American ancestry.

## SEARCH RESULTS/HISTORY

Not Applicable.

## LEGAL HISTORY

**300 WIC Subsection(s)**
Anthessa--WIC 300 (a)(b)(g)(j)
Anthony--WIC 300 (a)(b)(g)(j)
Ariel--WIC 300 (a)(b)(g)(j)

| **Initial Removal** | **Initial Detention Order** | **Initial Jurisdiction Finding** |
|---|---|---|
| Anthessa -04/19/2016 | Anthessa - 01/28/2015 | Anthessa - 05/29/2015 |
| Anthony-04/19/2016 | Anthony - 01/28/2015 | Anthony - 05/29/2015 |
| Ariel-04/19/2016 | Ariel - 01/28/2015 | Ariel - 05/29/2015 |

| **Initial Disposition Order** | **Initial 364 FM Review** | **Second 364 FM Review** |
|---|---|---|
| Anthessa - 08/03/2016 | | |
| Anthony - 08/03/2016 | | |
| Ariel - 08/03/2016 | | |

| **Initial 366.21(e) – 6 Month FR Review** | **Initial 366.21(f) – 12 Month FR Review** | **Initial 366.22 – 18 Month FR Review** |
|---|---|---|
| Anthessa - 10/22/2015 | Anthessa - 03/17/2016 | |
| Anthony - 10/22/2015 | Anthony - 03/17/2016 | |
| Ariel - 10/22/2015 | Ariel - 03/17/2016 | |

| **Initial 366.25 – 24 Month/PP Review** | **Initial 366.3 PP Review** | **Initial NMD Review** |
|---|---|---|

| **FR Services Terminated** | **Non-Reunification Ordered** | |
|---|---|---|

**Initial Permanent Plan: Type/ Date Ordered**          **Current Permanent Plan: Type/ Date Ordered**

Anthessa Theresa Grimes, et al                                          16JD0171

## Additional Legal History

| DATE | PROCEEDING | DISPOSITION |
|------|-----------|-------------|
| 11/21/2016 | Disposition Hearing | |
| 09/20/2016 | Transfer In Hearing Arraignment | Jurisdiction accepted by San Mateo |
| 08/03/2016 | Transfer Out Hearing Arraignment | Jurisdiction being considered for San Mateo |
| 06/19/2016 | Date children entered foster care | |
| 04/21/2016 | Detention Hearing | Children detained |
| 04/19/2016 | Date of Protective Custody | |
| 04/15/2016 | Completion of Family Reunification Services | Family Maintenance |
| 03/17/2016 | 12 month Family Reunification Review | |
| 10/22/2015 | 6 month Family Reunification Review | Set for 12 month Family Reunification Review |
| 05/29/2015 | Initial Jurisdiction Finding | Set for Family Reunification Services |
| 01/28/2015 | Initial Detention Order | Children Detained |

## REASON FOR HEARING

The Matter is before the Court for a Dispositional hearing. During the Dispositional phase, the Court will make a decision whether to declare the child a Dependent Child of the Court and will determine if the child can be in the custody of a parent or whether out-of-home placement is the best plan for the child. If the Court makes Dispositional orders, it will set a review hearing within the next six months.

Anthessa Theresa Grimes, et al

16JD0171

## PATERNITY/LEGAL RELATIONSHIPS

On 4/21/16, the San Francisco Juvenile Court ordered presumed father status to Mr. Grimes.

## FAMILY LAW STATUS

On November 10, 2016, the undersigned checked into the Odyssey Portal regarding any active or past cases that involved the parents in court. There were three reports with Carl Anthony Grimes listed as the defendant and two of those involved Maria Theresa Labiano Martinez as the co-defendant. The cases were CLJ506178 filed on June 7, 2011, CLJ206453 filed on August 15, 2012, and CLJ207690 filed on March 26, 2013. Two actions involve incidents of Unlawful Detainers. The allegations are that the defendants did not pay the rental amount and were being legally evicted. In addition there is a CLJ506680 on June 27, 2011 that the parents are the plaintiffs against leasing consultants for Evergreen Ridge Apartments in which they were suing for harassment that is aligned with the CLJ206453 action.

The earlier action of CLJ506178 involves the father Carl Anthony Grimes contesting a repossession of a vehicle since payments were not maintained.

CLJ206453 was decided in favor of the defendants, that the Unlawful Detainer was defective therefore the defendants recovered the costs of the trial.

CLJ207690 was decided in favor of the plaintiffs and the parents were ordered to pay the costs of back rent and damages to the tune of $16,540.00.

## PRIOR CHILD WELFARE HISTORY

The following data was obtained from the Jurisdiction/Disposition Report from the Superior Court of California, dated 05/31/2016:

| DATE | ALLEGATION | MINOR | SUSPECT | DISPOSITION |
|------|-----------|-------|---------|-------------|
| 11/28/2011 | General Neglect | Anthessa Grimes Anthony Grimes | Maria Martinez | Unfounded |
| 01/30/2012 | General Neglect | Anthony Grimes | Maria Martinez Carl Grimes | Evaluated Out |
| 03/06/2012 | Physical Abuse General Neglect | Anthessa Grimes Anthony Grimes | Maria Martinez | Evaluated Out |
| 03/30/2012 | Emotional Abuse | Anthessa Grimes Anthony Grimes | Maria Martinez | Evaluated Out |
| 12/05/2012 | Caretaker Absence | Wendenberg Martinez | Maria Martinez | Substantiated |
| 04/05/2014 | Emotional Abuse | Anthessa Grimes Anthony Grimes Ariel Grimes | Maria Martinez Carl Grimes | Substantiated- General Neglect Physical Abuse- Unfounded Case Open for Services |

Anthessa Theresa Grimes, et al                                                     16JD0171

| 01/22/2015 | General Neglect Physical Abuse | Anthessa Grimes Antony Grimes Ariel Grimes | Maria Martinez Carl Grimes | Substantiated- General Neglect Physical Abuse- Unfounded Case Open for Services |
|---|---|---|---|---|
| 08/07/2015 | Sexual Abuse | Anthessa Grimes | Carl Grimes | Evaluated Out |
| 08/10/2015 | Sexual Abuse | Anthessa Grimes | Carl Grimes | Unfounded |

The father Carl Anthony Grimes has two other minor children from a previous relationship who are not in his care. Antonio Cisneros-Grimes, Date of birth July 11, 2003 and Angelina Cisneros-Grimes, Date of Birth September 11, 2006. The father had an open case in Alameda County due to allegations of domestic violence. There was a case open with Alameda County, the father's parental rights' in regards to the minor Angelina, were terminated on April 14, 2011, and his parental right in regards to the minor Antonio were terminated on June 23, 2011. The recommended plan for both minors was adoption.

The mother has another child from a previous marriage Wedenburg Martinez. The mother had allegations of Caretaker Absence substantiated against her, due to leaving the child in the care of the maternal grandmother in 2012 and not returning.

The mother had a case open from January 2015 to April 14, 2016 in regards to General Neglect due to domestic violence with the father. The children were in out of placement from January to December 2015, and then in the mother's home from December 2015 until April 2016.

## CRIMINAL HISTORY

On November 7, 2016, the undersigned received a California Law Enforcement Telecommunications System (CLETS) report for the mother. No criminal history was found for the mother.

On October 27, 2016, the undersigned received a California Law Enforcement Telecommunications System (CLETS) report for the father. The father has the following criminal history:

- The father was cited for disturbing the peace (415 PC) in February 12, 1990 by the Oakland Police Department, he was released due to lack of evidence.
- The father was cited in May 11, 1991 for counts of battery and offensive words (242 PC and 415 PC respectively) by the Oakland Police Department. He was convicted of a misdemeanor and sentenced to 18 months of probation and 2 days in jail.
- The father was brought to court on July 23, 1991 for Battery and making annoying telephone calls (242 PC and 653M PC) by the Oakland Police Department. Both counts were dismissed at the motion of the prosecutor.
- The father was arrested on two counts on November 3, 1993 by the Oakland Police Department. The counts were 422 PC Intent to terrorize, 247 (B), Shooting at an unoccupied vehicle. On January 21, 1994 the counts of 422 PC and 247 (B) were dismissed as he plead to a lesser charge. That charge was 415 PC Fighting/Noise/Offensive Words. That count was successfully dismissed as he completed a diversion term.

Anthessa Theresa Grimes, et al                                                                16JD0171

- On February 20, 1999, warrants were issued against the father by the Pinole Police Department for 273.5 (A) Corporal Injury against a Spouse and 422 PC, Intent to terrorize. The father was acquitted and found not guilty.
- On November 29, 2003, the father was arrested on the count of 243 (E) (1) by the Oakland Police Department, Corporal Battery to Spouse and was released due to lack of evidence.
- The father was arrested by the Oakland Police Department in December 26, 2006 for 422 PC Intent to Terrorize and 243 (E) (1) Spousal Battery. Both counts were dismissed due to lack of evidence.
- The father was cited on July 25, 2007 by the Oakland Police Department for 273.5 Inflicting Corporal Injury to a Spouse. The case was dismissed due to insufficient cause.
- The father was cited by the Hayward Police Department on October 23, 2007 for 273.5 (A) Inflicting Corporal Injury to a Spouse. The case was dismissed for insufficient cause.
- The father was arrested by the San Francisco Police Department on January 23, 2015 on counts of 273.5 (A) Inflicting Corporal Injury upon a Spouse, 273A (A) Child Cruelty, and 591.5 Damage to a Wireless Device. The father was detained and then released for lack of sufficient evidence.

## JURISDICTIONAL SUMMARY

On August 3, 2016 the San Francisco court took jurisdiction regarding the matter of Anthessa, Anthony, and Ariel Grimes. Then on September 20, 2016 the San Mateo Juvenile Court accepted the transfer-in and set the disposition for the 21st of November of 2016.

## SOCIAL STUDY/FAMILY ASSESSMENT
## Problems Requiring Intervention and Possible Causes:

The mother has four other children from another relationship in the Philippines that she has described as turbulent. The mother also stated she was disowned by her mother because she started a relationship with the father Carl Anthony Grimes. Her eldest children are in the Philippines with the exception of Wendelberg Martinez who lives with the maternal grandmother in San Bruno. The mother has had no ongoing contact with her four eldest children. The mother has been in a volatile relationship with Carl Anthony Grimes since 2010. Her characterization of the relationship as described to the San Francisco Social Workers involved verbal humiliation, threats of physical harm, and physical harm inflicted upon her. The children were witnesses to the incidents.

The father has two other children from a previous relationship and his parental rights were terminated due to his violent behavior. Those two older children have been adopted out and are not in contact with the father.

The family has a history of homelessness since the father cannot maintain a job since he is worried that the mother is having an affair. The mother described his controlling behavior. The father is convinced that the mother is having sex with other men and he described the sexual acts to his daughter Anthessa in detail. The family had entered into Hamilton House shelter in San Francisco but were asked to leave when the domestic violence came to light. The father believed that a male staff member was having an affair with the mother and threatened kill him.

Anthessa Theresa Grimes, et al                                              16JD0171

The mother was moved to a domestic violence shelter through La Casa de las Madres in San Francisco and would receive additional assistance from Asian Women's Shelter. The mother was granted a restraining order that protected her and the children from contact with the father. Note that the mother would then ask to remove the restraining order after the father was released from jail. The father went through an assessment while at San Francisco county jail and was referred to the NOVA (Non Violence Alliance Program). The assessment deemed that the father was suffering from mental health issues and was obsessed with the whereabouts of the mother.

*False*

### Relevant Social, Cultural, and Physical Factors:

The undersigned spoke with the father on October 19, 2016. The father is the youngest of a family of five. The father described his parents' relationship as being married for over 40 years. He described his youth in idyllic terms and his parent's marriage as strong and intact.

The father talked of the family that he shares with the mother in glowing terms. The father described dinner together as a family as a "beautiful thing" and how mother would have the children pray before eating and at night the children with mother with be on their hands and knees praying. He spoke of how he met the mother as a Samtrans driver, of how she is a nurse, if how they didn't realize she was pregnant with Anthony, and that his intention is to marry the mother. He said that the mother and he had been "reunified" long ago and the allegations of Domestic Violence (DV) were completely made up. The father remains sure that the case will turn in their favor, he contends that the "truth" will come out and he proclaimed he has "video evidence" even though he claims not to be present at the home. He described San Francisco court as being "corrupt" therefore there is a civil suit against San Francisco Child Welfare Services and from the mother and himself. He follows the cases of Robert Powell who sues Child Protective Services and he repeated that he knows the law and how he has video evidence of his interactions with the children. He said there is no need for discipline since the children are little, just to talk to them, they are never spanked. He viewed the DV incident between mother and himself as resolved, he said he has a certified copy of the dismissal of charges on January 2015.

The father never mentioned specifics about his two children from another relationship that were adopted out. The father just spoke of how familiar he is with the system and he has had interactions with Child Welfare Services in Alameda. The father repeated that he knew the law and he knew his rights.

The undersigned spoke with the mother on October 31, 2016. The mother comes from a family of three children. The mother was born in the Philippines and was raised there along with her brother. The mother said that her mother left them behind to make a living in the United States and when she was prepared, she sent for them. The mother described her younger sister as being the only sibling brought with her mother from the Philippines. The mother spoke of her background. She said she has two siblings, and the youngest came to the United States with her mother earlier. She and her brother followed when older. She said they all lived together and her little sister has her own family in San Bruno now. Her brother with his family lives with her mother also in San Bruno. She said they don't keep in touch because her family disapproves of her relationship with the father Carl Grimes.

Anthessa Theresa Grimes, et al                                                    16JD0171

She stated she is a good mother and had been looking to obtain a job with Veterans Administration since she said she is a certified nursing assistant, but because of the pregnancies of Anthony and Ariel, she couldn't accept the position. Instead she was a stay-at-home mom. She was asked about homelessness and she stated that she and the father had rented an apartment but had to move when prices rose and they then moved to a smaller place in Pacifica for even more money which made them eventually move out to Vallejo to stay with his relatives. She said she was a client of Compass Point which had found this house for her and Compass Point was subsidizing $2000 of the total as long as she had the children. Once she lost the children, she was removed from the program and now shoulders the cost of housing by herself.

The mother did not speak as to her past relationship, her marriage in the Philippines to Robert Tamayl. The mother omitted mentioning her four elder children when the undersigned asked her about a description of her family. The mother did state that while estranged from her mother, that her mother "knows" what was going on. When asked by the undersigned to clarify what that meant, the mother simply repeated cryptically that her mother "knows".

## Family Strengths:

The undersigned has had the opportunity to observe the mother during her visitation times with the children on October 12, 2016 and October 26, 2016. The mother is very tender with all the children. The mother strives to pay attention to each of their needs as each child is clamoring for her attention. All therapists Ms.Wallace, Ms. Harkless, and Mr. Bruso, report that the mother has always been affectionate with each child. The godparents and current care providers Mr. and Mrs. Golden, also report that the mother has a sweet personality and a loving disposition when it comes to her children.

The children themselves are delighted when they have time to be with their mother. The children are entranced by the toys they can play with or the snacks that the mother provides. The children are at ease with the mother and play with her, braiding her hair or asking that she cut their toenails. The children are not fearful of being with their mother and appear to enjoy the interaction during the visit. Anthessa is the leader of the children and she is very mature for her age of five years old.
Anthony is eager to please and bonds well especially with males.
Ariel presents as initially shy but as she gets to know the person, she is uninhibited in displaying affection as she reaches out to be hugged and hugs back in return.

The father described himself as the father of these three wonderful children and proudly displayed photographs of each child that he keeps in his wallet. The father has stated that the family has been "reunified" long ago.

## Family's Perception of Their Needs:

The father has stressed that the children need to be with their mother. In his interview with the undersigned on October 19, 2016, the father made reference that San Francisco Child Welfare had no right to be involved after the case had ended on April 14, 2016. The father also repeatedly stressed how the Social Worker of San Francisco had come into the home with the Brisbane police with an unserved restraining order, which according to him, since it had not been properly served, that restraining order had no value.

Anthessa Theresa Grimes, et al                                          16JD0171

The undersigned spoke with the mother on October 17, 2016. The mother has expressed multiple needs. The mother has asked for a Clipper Card to defray the costs of commuting from Brisbane to Oakland for visitation. The mother has also asked for more hours to be added to visitation, stating that San Francisco Child Welfare Services owed her at least seven hours. The mother also stated that the family counseling of one hour, eats into her visitation time. The mother would like that family counseling to be considered as a separate hour. Furthermore the mother would like to celebrate her son's birthday with him even if it isn't on her visitation day.

The undersigned spoke with the mother on October 31, 2016 regarding the events of the last removal of the children from her care. The mother stated that the family was finally reunified as of April 14th, 2016. The mother felt that the children were content and she had abided by all the requisites to merit having custody of her children. When she was talking of the reasons for deserving the custody of the children, it was almost identical to the reasons that the father had stated for the family to be reunified. Both mother and father stated that the case was closed by San Francisco Child Welfare on the 14th of April and that removal of the children on the morning of the 19th of April was a violation. The mother, like the father, stressed that nothing was wrong with the children that day. The mother stated that the San Francisco Social Worker Ayerdis had told her that the last visit would be a "goodbye" session on the 18th of April because the children had been officially returned on April 14. She stated that the Social Worker did come by that day. She stated that she did not hear the Social Worker demanding to come back that evening of April 18th. She stated that when she retrieved the voicemail, she responded to the Social Worker. The mother stated that everyone was asleep when she opened the door at 3am on the 19th when the police came with the Social Worker and then, the children were removed. She stated she found out later that it was via a referral from Linda, the godmother, who claimed that she was texting the father in Court. The mother did not mention the van that the Social Worker observed that belonged to the father being in the neighborhood. The mother stated that she proved she was not in contact with the father since she could show her phone bill, furthermore she emphasized that there was no restraining order that legally kept her and the father apart. When the mother was asked about safety for the children and she stated that she felt badly about the allegations which she couldn't express. She said she wanted a physical exam on Anthessa because when told that Anthessa had said those "things", she couldn't believe it. The mother was asked about the father. She said she understood him. She stated he would fight for his rights as a father. When told that the children were afraid of her safety when she was with the father, she said maybe in the past but the father just raises his voice and has always been that way. She said she was always with her children and would know if anything happened. She stated that if anything occurred she would protect her children and separate, she added that the father would do the same thing as well.
She was calm and steady when accounting for the incident.

Anthessa Theresa Grimes, et al                                                16JD0171

## STATEMENTS

### Parents/Legal Guardians:

When the undersigned met with the current care providers on October 5, 2016, they were asked as to the placement of the children. Mr. Golden said termination of parental rights was hard for him but seemed correct and Mrs. Golden couldn't continue, she needed to take a break. Upon return Mrs. Golden stated that she feels that the children should stay with them and this is the home for them.

During the conversation that the undersigned had with the mother on October 31, 2016, the mother continued to insist that the children are best when with her. She stated that they have a home in Brisbane and the children are safe with her since she will never let anyone else take care of the children, only herself. She described herself as a good mother who just misses and wants her children back.

On October 14, 2016, the undersigned spoke with the father. The father insisted that children were happy with mother and the whole issue was made up by the godmother who is the current care provider, since she wanted the "money". The father said that if more assessments were held that the undersigned would see how happy the children are with the mother as well as the father. Note he used terms "mother" "father" "children" when talking, all references were in 3rd person.

### Child(ren)'s:

The undersigned interviewed the children on October 7, 2016. Anthessa was monosyllabic and said very little. She stated she had last seen her father at the mall but could not put a time frame to that event. Anthessa was guarded in expression and outlook. In the Keller Center interview held on September 21, 2016, Anthessa has been a bit more circumspect, she has stated that she likes the home but they are just "madrina and padrino." The son, Anthony had expressed that he liked staying at madrina and padrino's home. He was open and indicated he did not wish to see his father because of how his father hurts his mother. Anthony described how his father pushed his mother and how she fell. Anthony said that when that happened he didn't cry. Anthony stated he never cries and neither does his mother He volunteered answers without needing to be prompted indicating a comfort level in that environment. The youngest child, Ariel, appeared to be nervous. She was unable to answer fully as to whether she wants further contact with her father or if she is comfortable in the placement. She appeared to be content at the current placement.

Anthessa Theresa Grimes, et al                                                    16JD0171

## Others:

### Danielle Mendoza, San Francisco Social Worker

The undersigned consulted on October 5, 2016 with the previous social worker from San Francisco, Danielle Mendoza. Ms. Mendoza stated she had been on the case since April because the last assigned social worker had been threatened by the father when the children were removed. She disclosed that the father has a history of threatening social workers and has done so in the past in Alameda when he had lost parental rights over his other children from a previous relationship. Ms. Mendoza characterized the mother as having very low self-esteem and she believed that the mother fears for her life when she is with the father. Ms. Mendoza stated that the mother would choose the interests of the father above that of herself or the children. Ms. Mendoza suspected that the father is living with the mother in San Mateo and she suspected that mental health issues greatly plague this family. There is a current restraining order between the father and the children which so far the father has not violated per Ms. Mendoza. The Social Worker felt very comfortable about the placement of the children in the care of the care providers who are the children's godparents.

### Linda and Steve Golden, godparents and current care providers

The undersigned interviewed the godparents and the children on October 5, 2016 at the home of the godparents. Ms. Golden stated that she volunteered for a Domestic Violence Agency and was told by the staff of the agency that a family needed help. She became acquainted with the family and grew to be supportive of them. She said the staff were very supportive as well, even giving the father their old van so the family could have a vehicle. This is the vehicle that has been noted in previous reports. She described the family as being in alternative states of homelessness and that seemed to be a pattern. She had warm words for the mother "we love her" but contended she was not strong enough mentally to deal with the father. She recounted the mother telling her of a time when the father choked the mother and that the mother had passed out for four hours. She described the mother as being subservient to the father. Mrs. Golden spoke of the incident in the courtroom where she saw mother texting father that the court case had been resolved and the children were now returned to her. Mrs. Golden stated that the mother used to meet with her on a regular basis. The mother had an application on her telephone where she would see where the father was so she could monitor if she was followed.

Mr. Golden stated that after the ceremony as godparents, the father tried to intimidate him. He described the father as having paranoid tendencies. Mr. Golden stated that the father would lose jobs because he insisted upon his wife keeping her phone on at all times so he could monitor her conversation and that would distract from his work as a driver. Mr. Golden expressed surprise that despite that chronic history of inconsistency, the father would secure good jobs within a week from dismissal and Mr. Golden was surprised how resilient the father appeared to be. Mr. Golden spoke of the children and how they interacted with each other. Mr. Golden described when picking the children up from visits with the parent, how the children seemed to revert to infantilism. They couldn't buckle themselves in the vehicle and how they regressed in attitude. Mr. Golden recalled how those visits reminded him of the time when he first met the family and how all children were in diapers and drinking out of baby bottles regardless of age. Mr. Golden described how all children seemed to have selective mutism as they would not talk. Both care providers stated that they try to speak to the children and they have gradually made progress and in turn the children have disclosed

Anthessa Theresa Grimes, et al

16JD0171

more. Mr. Golden says it is hard to listen. Mr. Golden spoke of when Anthessa first told him of the abuse witnessed, he asked her to stop so he could hug her.

Both Mr. and Mrs. Golden agree that Anthessa is the leader of the children and she often directs the siblings on how to behave. Mr. Golden described her as a woman in a girl's body. Mr. Golden stated that during movie night he has to know where to sit because Anthessa can exceed boundaries in terms of touch. Mr. Golden expressed that he is concerned about Anthony and how he reacts. Mr. Golden described a time when the children were being transported and how it was affecting them and how Ariel was trying to provide comforting words to Anthony, he glanced in the rear view mirror when he heard Anthony say something harsh towards his sister and saw the expression of Anthony was an exact copy of that of the father in an angry state. Mr. Golden pointed that out to Anthony and stated that the change was instantaneous and Anthony returned to his normal state as if nothing happened. Mr. Golden stated that Ariel can provide the most honest communication. He said she is very affectionate and trusting. Both spouses spoke of the previous caregivers and how when they were moved to their home, the children asked if they were going to be "baby-gated." Apparently in the previous household, the caregivers noticed that Anthessa would leave her room to go to the room of her brother at night, therefore the caregivers would double lock "babygate" so that would not occur. Mr. and Mrs. Golden did not blame the caregivers, both stated that they too did not know of the details of the sexual abuse so it was foreign to them. Both caregivers spoke of the sexual incidents but left it in general terms because the children were present in the room coming in and out playing with toys. They spoke of the sexual attitude of Anthessa and the licking incident between her and Anthony. They had Ariel sleep in the room with them for a while until they felt it was appropriate for the sisters to stay in the same room together. Mr. and Mrs. Golden have stated that they have to keep an eye out for any revelations because the children will disclose at the last minute.

The concerns of the caregivers are regarding safety, they fear that the father knows everything that the mother does. The undersigned addressed safety issues in regards to restraining orders, he advised them to file with the Sherriff's Department. There was a prolonged talk between the couple of how evident the abuse was but how they couldn't understand how unwilling the mother was to act. The undersigned provided psycho-social education on the cycle of Domestic Violence to the caregivers. Mr. and Mrs. Golden are genuinely worried that the children will not receive appropriate therapy.

Tanya Chestnut, foster care provider
The undersigned left voice mail for foster parents on November 7, 2016. Foster mother called back, she stated she had the children for only a little time but they were very good. She said the younger would cling to the older child. They played well together, she described them as "model children". Very quiet and nothing out of the ordinary. She did not segregate the children from sleeping separately. Her belief is that the children will go far. She was impressed that Ariel was potty trained.

Lynne Olgason, Environmental Alternative Foster Family Agency
The undersigned spoke with Ms. Olgason and inquired if there was any issues that arose while the children were in the care of the agency. The only issue that Ms. Olgason could speak of was that Anthessa would like to get up and play in the middle of the night, asides from that there were no issues.

Vicky Huey, Mental Health Supervisor for Alternative Family Services

Anthessa Theresa Grimes, et al                                                16JD0171

On November 4, 2016, the undersigned called Ms. Huey and spoke with her. She stated that the agency was going to set up therapeutic visitation for the father but that never started b/c the children expressed fear of meeting father. After the sexual abuse allegations came to light, the prospect of therapeutic visitation was indefinitely tabled.

Dr. Holly Oswald, director of Alternative Family Services
On November 4, 2016 the undersigned left voicemail for Dr. Oswald. Dr. Oswald returned the call. Dr. Oswald could not speak to the specifics but when asked about the recommendation for therapeutic visitation for the father she stated that either the social worker recommended that service to the court or the court could have mandated that service on their own. She stated that the agency, if in favor earlier, now would no longer be in favor of therapeutic visitation after the sexual abuse allegations arose.

Ben Bruso, Mental Health Clinician PCCI #2401
The undersigned spoke with Ben Bruso mental health clinician on November 7, 2016. Mr. Bruso stated the following: that all family members are very consistent in regards to attendance, all are participating, the mother follows his directives. The goals they are working on is for the mother to being able to talk to children about what happened. The recommended goal of the previous social worker was to have the mother initiate this step and Mr. Bruso believes she is reluctant to do so out of guilt and shame. The mother has been concerned about letting the children know when they can return home. The mother has been unable to answer that question to the children's satisfaction. Mr. Bruso stated that visits were initially distressing to children and per the current caregiver the children would go 24 hours after a visit not talking at all. The goal has been to work on the mothers' feelings and to support children during transition. Mr. Bruso stated that he has seen good progress and said there is a big change in terms of her approach to the visits. A secondary goal has been to create structure to address children's behavior. Mr. Bruso stated that the mother still has difficulty addressing the action of a misbehavior or problem. She will hug and kiss the children and he has noticed that they tend to regress. He speculated that possibly she doesn't want to upset the visits but also she doesn't wish to address the domestic violence. Mr. Bruso wonders if he wasn't there, would the mother continue with the soothing style without recognizing the things that have happened. He described her parenting as very "permissive".

The main goal that Mr. Bruso would like to address is when "bad" things happen. The family appears very "coached" as both mother and children will not address the bad things and have learned to let it be acceptable as long as the issue is not spoken of.
Mr. Bruso said that per discussions he had with colleagues that Ariel views the conflict as her father being mean to her mother. Anthessa, on the other hand, freezes up and tries to change the subject. Mr. Bruso stated that the children want to be with their mother especially Anthessa, however in regards to trust, he stated he wouldn't be surprised if the children don't trust the mother when the father is around since she has not set boundaries with him.

Suzanne Harkless, ASW
On November 4, 2016, the undersigned spoke with Suzanne Harkless, therapist at Alternative Family Services. Ms. Harkless has been following Ariel for past two months. Ms. Harkless described her as

Anthessa Theresa Grimes, et al

16JD0171

not likely to express her concerns but lately has been much more communicative and interactive. When drawing a picture of a family she unprompted stated "Daddy is mean to mom and mean to me". She uttered the same statement at another of the sessions. Ms. Harkless stated that Ariel doesn't usually say much and describes her as the "invisible child". Ms. Harkless did mention that Ariel does talks to adults more freely as a positive connection has grown. Ms. Harkless has not seen Ariel get upset but stated that Ariel told of how she hears her sister Anthessa cry at night because she misses their mother. Ms. Harkless did state she heard from her colleague Ms. Wallace that children were upset when they learned they may have visitation with their father.

### Kasey Wallace, MFTI

The undersigned received a call back from therapist Kasey Wallace on November 11, 2016. Ms. Wallace is the assigned therapist for Alternative Family Services for the elder two children, Anthessa and Anthony. Ms. Wallace was asked about the sexual molestation allegations. She relayed that Anthessa stated that her father touched in the private area. She was not specific about where on the body but indicated below the waist. Anthessa also stated that her father had asked her to lick her siblings. When asked where to lick specifically Anthessa replied "all over." As to where it occurred it was in the downstairs with the father and siblings present but not mother. Anthessa stated she told her mother and her mother told her to ignore what her dad said. As far as the number of times this happened, the Ms. Wallace did not inquire. Ms. Wallace has not pushed the subject because she stated that Anthessa regresses like a "baby." When Anthessa was informed she might have to see her father on therapeutic visits, Anthessa ran away into a little tunnel and Ms. Wallace just waited until she was ready to emerge. Anthessa is meeting the goals of safety and after the disclosure is more relieved as apparent by being more expressive and being proud of no longer keeping the secret of licking her siblings. Ms. Wallace has said Anthessa felt bad about freezing when she had to testify in court. Ms. Wallace relayed that Anthessa used to rip toys and papers into pieces during the initial meetings, she no longer does that. Anthessa mostly talks of mother and siblings, she does not mention father. Ms. Wallace determined that Anthessa has a parentified role in the family. Anthessa definitely misses "mommy" and enjoys visitation in a controlled setting. Anthony she described as very quiet. While Anthessa externalizes her feelings, Anthony internalizes his feelings. Ms. Wallace stated that Anthony described hiding underneath covers when his parents fought. Anthony is into superheroes who can solve problems. Ms. Wallace said she believes that the mother loves her children for she has sat in for Ben during a family counseling session. She stated that her concern was if the mother could keep the children safe. Ms. Wallace is not sure if the mother is prepared to listen to her children talk about their experiences. Ms. Wallace knows that the mother wants her children back but is uncertain of how she will make sure that there is no contact between the children and the father.

### Supporting Evidence:

### Keller Center Interview October 19, 2016

On October 19, 2016 the undersigned went to the Keller Center at the agreed upon time with Officer Malone. Present at the center were the Associate District Attorney, Officer Robert Malone, and two colleagues of the undersigned: Jeff Lim and Riza Alvarez. Conducting the interview was Miriam Wolf. The interviewee consisted of a former step-daughter of client Carl Anthony Grimes who is now 24 but was describing incidents from when she was 13 and 14. Her name is Jasmine Reyes, her date of birth is October 11, 1992. She presented as calm, did not appear to be nervous, and open to being

Anthessa Theresa Grimes, et al                                                    16JD0171

interviewed on tape and she brought her cousin Richard with her for moral support as well as court advocate.

She described herself as the de-facto mother of her two younger half-siblings: Antonio Grimes-Cisneros born July 11, 2003, Angelina Grimes-Cisneros born on September 11, 2006. Carl Anthony Grimes became her stepfather at the age of 9. She said when Officer Malone came to her doorstep to speak about him she described herself as "freaking out." She stated "I don't want nothing to do w/this man today". She said he has done some "fucked up shit." She said he was an abusive "perv" who liked watching her every minute since she started developing "body parts". His looking made her uncomfortable. He would like to "hover" around her and when she was undressing she caught him looking and "biting his lip." She said he grazed her twice on the breasts, both occasions when they were sparring since she was learning martial arts. She said he once kissed her in the face and she screamed for her mother. She said she complained to her mother but she did nothing "love takes over people". She said she watched him for years beat her mother until she was 12, then she fought back, hence the martial arts. She said that the effects have caused her mother to have "tumors now" in her opinion. She described how he would beat her mother, choke her, threatened to kill the family the whole time. She described how the family was kicked out in the rain and had to stay in a shelter because of the stepfather turning them out. He would say "retarded sexual things." When asked to elaborate, she couldn't say, she said she tries to block it. She said you could verify this by asking her accompanying cousin Richard because she would go to his house to complain. She described how he "done cut my mom across the throat, she has a scar," she saw the aftermath and witnessed her half-siblings locked in a closet when that occurred. She wonders if step-siblings were abused, cannot say, they were placed with adoptive parents. She said her stepbrother Antonio hates his father, didn't go into detail why. She said she had to leave the house and admitted pulling a shotgun against the stepfather. She said she filed a report with Child Protective Services to protect her stepbrother. The police were always coming over for domestic violence issues. She went into foster care and said due to stepfather, she had missed a whole year of school (8th grade). She said her childhood was hard and she ran away from several group homes. Eventually once all children were removed, the stepfather and mother went their separate ways.

She knows Teresa Martinez. She described her as that "bitch" who had an affair with her step-father and was one of the reasons her mother ended up in jail. She said that Teresa was at the court hearings when her mother was losing custody of the children. She blames her step-father for a multitude of issues, she said she has been diagnosed as bi-polar, schizophrenic, prone to depression, and Post Traumatic Stress Disorder. Her mother now feels very guilty about the past and she tries to take care of her mother. She said she herself became an abuser and she attributes that to the effects of witnessing her step-father and mother's relationship. She expressed worry about her step-siblings because they are her "babies." She also said that the step-father would stalk her mother and believes that to be recent occurrence but didn't provide a time frame.

Miriam Wolf came back in and asked if there were any follow up questions. Jasmine is now going to therapy and has been in therapy since 13 years of age. After that Jasmine was thanked and the interview ended.

Keller Center Interview September 21, 2016

Anthessa Theresa Grimes, et al                                                    16JD0171

On October 31, 2016, the undersigned met with the staff of Keller Center to view the videotape of the interview held September 21, 2016. The undersigned reviewed all four tapes consisting of individual sessions with the child Anthessa, the child Anthony, the child Ariel, and a pre-session with the current care providers Mrs. Linda Golden and Mr. Steve Golden. All interviews were conducted by Miriam Wolf.

The session with Anthessa was the most active. She enjoys hip hop and likes gymnastics. She is aware of her siblings' activities in ballet and tap. She is aware of the Wednesday visits w/her mother and that she is at madrinas house b/c dad was "being bad". She said her father is bad to her mother, she stated father slapped her mother, threw the mother to the ground, and would yell at the mother. She described that father would spank the children in front and back of the "privates". She stated that father told her to lick Anthony and Ariel because "I'm doing bad stuff". She recalled it happening twice and she didn't want to do it. She said that it occurred in her mother's home in Brisbane. She described the licking as like "a dog". She stated he wanted her to lick them on their legs and face. She did not feel good about that and was not happy. When he wanted her to do it again, she didn't want to and he punished her by putting her in time out. Her mother came home and told her she didn't need to be in time out. She said she also licked at madrina and padrinos house, licked Ariel in the face and "that's it". She said "madrina" and "padrino" are proud of her not now licking Ariel and Anthony. She stated that her mother was going to be proud of her not licking. She said she never licked at Jasmines house, Anthony "told a lie". She stated the father touched her "one time" in the privates, she indicated her groin area. She said she was wearing her pajamas and he put his hand in there "it hurt." She said her brother and sister were napping and mother was not at home. She stated he grabbed my hand and pulled me. She told her mother in the park of what happened. She stated she felt happy living with her mother but with my "dad" it wasn't happy.

Ariel's interview was very brief. She used a lot of playdough, she created a book and said that when she is with her mother, Tessa always sleeps in her room. She did not describe any incident of licking or violence.

Anthony's interview began with describing an outing at Dolores Park. He stated he thought the reason he was there at Keller Center because "our dad hit us". He said dad pushed mom off the stairs, he was in Tessa's room when he saw that. He said the police came and described feeling "bad" when that happened. When asked why Tessa was in a different room at madrina and padrinos home he said Tessa "bothered" Ariel by licking her. He said Tessa has licked him in the face, ears, and leg. He is happy at madrina and padrinos house. He said he was hit in the leg by his dad with a belt one time and it hurt, that happened at his mother's house. He said she was not there in the room, she was downstairs when that happened.

Mr. and Mrs. Golden stated the following: Anthessa shuts down with strangers. Educationally the children are poised to succeed. Mr. and Mrs. Golden spoke as to the licking incident at their home. Ariel appeared to be "always awfully tired" and when looked into the room, Anthessa pretended to be asleep. According to Mr. and Mrs. Golden, Anthessa got "baby gated" in the other foster home, where she could not go outside of her room in the middle of the night. Mr. and Mrs. Golden said Anthessa had been "bothering" Ariel. Three weeks ago they put Anthessa in a separate room. They asked her if she wanted to go back to the room with her sibling, initially she said no. Anthessa has since gone back to with her sister and display and no further licking incidents have arisen. Mr. and

Anthessa Theresa Grimes, et al                                                                16JD0171

Mrs. Golden see that as a milestone. Mr. and Mrs. Golden stated that they had heard of the father touching Tessa and then bringing the children to hospital claiming a stranger had done these things. Anthony and Anthessa are more like "boyfriend and girlfriend" per Mr. and Mrs. Golden.

## CHILD(REN)

**Regarding:** Anthessa T., Anthony A., Ariel A.

**Medical:**

There are ongoing minor medical concerns. Anthony suffers from asthma and uses medication to control the asthma. He was recently prescribed glasses. The children, when with the parents suffered from eczema, but that situation has since been resolved.

**Developmental:**

The children have never been members of a regional development center. There are no ongoing developmental concerns.

**Educational:**

Anthessa is taking Arabic in school Key Academy in San Leandro and per the report from the godmother she is achieving all 4's, the highest category in all her subjects. Anthony and Ariel are in Peixoto Head Start program in Hayward and are doing well. The children are enrolled in after school programs. Anthessa is taking hip hop classes, Anthony is taking tap classes, and Ariel is enrolled in ballet classes.

**Mental & Emotional Status:**

The children are receiving weekly therapy services from Alternative Family Services. The eldest child Anthessa meets individually with the therapist Kasey Wallace. The therapist Kasey Wallace also meets with the middle child Anthony. The youngest child Ariel, has recently initiated weekly therapeutic sessions with the therapist Suzanne Harkless.

Per therapist Ms. Wallace, Anthessa has improved considerably. She was described as initially destroying toys and tearing up paper but has progressed and is now able to express herself without resorting to destructive measures. Ms. Wallace feels that Anthessa has been "parentified" and that the other two children look to her to lead. Their conversations involve speaking about the mother and her siblings but she does not bring up the father during conversation.

Anthony was described by Ms. Wallace as internalizing his feelings. Ms. Wallace stated that the child is into superheroes. Anthony has been able to describe about hiding underneath the

Anthessa Theresa Grimes, et al                                                16JD0171

covers when he heard his parents fight. Ms. Wallace is working to get Anthony to be more expressive with his feelings.

Ms. Harkless stated that Ariel initially was quiet and withdrawn. Ms. Harkless has acknowledged that Ariel has become much more communicative in therapy. Ms. Harkless recognized that the process is new and the approach has been to meet the client at her own pace.

Ben Bruso is the family mental health clinician. He sees the mother and the children together at the end of the visitation. Mr. Bruso has been encouraged that the mother has been following directives and that the end of the visits are no longer so traumatic. Mr. Bruso stressed that the mother joins in with the children to account for the ending of the visitation day. Mr. Bruso acknowledgef that her style is permissive and that she prefered to not confront issues but avoid the topic as much as possible. Consequently the traumatic events are not addressed and that sense of unfinished business lingers on with the family. The children hence are less prone to setting boundaries and are more likely to follow in a pattern of avoidance of difficult topics.

The therapists as a whole, advocate for continued sessions for the children.

## CHILD(REN)'S SAFETY IN HOME

It is the undersigned's respectful recommendation that the Court find by clear and convincing evidence that the welfare of the children requires that custody be assumed by the Court. Continuance at home would be contrary to the children's welfare as: there is or would be substantial danger to the health, safety, protection or emotional well-being of the children, or would be if the children were returned home and there are no reasonable means by which the children's health may be protected without removing the children from the children's parents.

The children have been subjected to witnessing incidents of domestic violence perpetrated by the father against the mother. These incidents have been physical, emotional, sexual, and verbal in nature. The mother has not yet demonstrated to be a safe parent to the children, in that she refuses to issue a restraining order against the father and in the past has willingly allowed the father to have unlimited access to the children. The children have expressed fear of the father and the mother has failed to recognize that fear that the children express.

## CONSIDERATION OF RELATIVE PLACEMENTS

To date parents have not given the undersigned relatives they wish to have for placement.

## OUT OF HOME PLACEMENT

**Regarding:** Anthessa T., Anthony A., Ariel A.

    **Current Placement:**

The children are all placed together in the Godparents home. The children are doing well, excelling in school and participating in after school activities. Anthessa attends a charter school Key Academy in Hayward and Anthony and Ariel attend Peixoto Head Start program in San Leandro.

**Sibling Placement:**

Siblings are all placed together.

**Independent Living Plan Services:**

Not applicable.

## VISITATION

The mother has been having ongoing supervised weekly visitation. Per Mr. Bruso the family mental health clinician, the sessions have been going well. The mother has progressed in her efforts to end the visits on an upper note. The mother has been compliant with all visitation, even getting discharged from the hospital for gallstones just in order to make it to the visit. Mr. Bruso would like the mother to be able to address the issues that brought the family to the center in the first place, namely the domestic violence, but in that regard progress has been slow.

On October 12, 2016, the undersigned observed a visit between the mother and children. The visit was supervised by a community worker from Alternative Family Services, this was her third time supervising the visit. She stated that the visits are the same and there aren't any deviations from routine. The routine appears to be mother brings food and children choose toys. The children compete for the attention of the mother and she tries to address each one individually by ether playing with them or feeding them.

The mother appeared friendly and pleasant, docile attitude will let children dictate terms of the meeting, all children took turns combing mother's hair and all children alternatively raided mother's backpack for sugary snacks. The mother doesn't show much expression, flat affect, and her tone remains unchanged. She does not speak disparagingly of godmother Ms. Linda Golden, the mother refers to her as "madrina." The community worker did take notes on phone but was also internet surfing. When the mother took the children at one point to the bathroom by herself, the community worker did not accompany them. The mother appeared to want to get assurance that the children are doing well and asked them about their schooling. Anthony was the most vocal in answering, no school on Fridays, couldn't say why when asked. The mother inquired if children got wet, when it rained. The children said they had no umbrellas or raingear. The mother said she would provide them with the items. The children played with separate toys asking the mother to either get a battery for the car or accoutrements for the dolls. At one point Anthony and Ariel argued about a game, she started to cry. The mother told Anthony "son" to share but Ariel said she just wanted to open the toy. Anthony and Ariel shared, Anthony soon lost interest. Anthessa liked to don jewelry of the dolls. She asked her mother about the time she wore heels and how she looked at that point. There was a time

Anthessa Theresa Grimes, et al                                                            16JD0171

when Anthessa whispered in mother's ear, subject unknown. The mother responded by reassuring touch. There was talk of bath time, apparently Ariel and Anthessa bathe together, Anthony separately. The mother wants to know if the children say their prayers at night, they didn't answer fully. The mother cut toenails of one child and all the rest wanted her to do the same to them, she obliged. The same routine was held with body lotion, she started spreading lotion for dry skin for one child and all children wished to receive the same treatment. Anthessa did headstands and Anthony followed. The elder children Anthessa and Anthony were jumping from the couch to the loveseat, and the mother would admonish them gently but they would disregard her. The mother talked with Anthesa about 3 words: be patient, be kind and be strong. Anthessa was very much the leader, others including the mother are followers, she insisted to play a game which everyone assembled puzzles. The mother was swift to point out the progress of Ariel in recognizing objects and participating. Anthony and Ariel seem very comfortable around adults. Anthessa was very watchful, many times the undersigned was able to see her watching him especially after she did an activity, performed a handstand or talked to her mother. Anthony had a bug bite on his hand which he showed to mother, there is another itchy spot on his body but wasn't visible so mother did not see it. At no point did the subject of separation come up, the children seem genuinely happy with mother.

On October 26, 2016, the undersigned observed a visit between mother and children. The undersigned was present while awaiting the arrival of the mother who had been running late. The undersigned and the godmother stayed until the mother arrived at 4:15. The children appear to be in good health. Anthony just received new glasses. Ariel and Anthony are very respectful and godmother's son Cody was a contrast in style. Anthessa remained close to Ariel and was alert and quiet. The children were excited to see their mother and immediately asked what gifts were being provided. The godmother hugged the mother, the mother didn't pull away but didn't respond with a hug back. The mother apologized to the undersigned, she said she was being held at San Mateo Medical because she had gallstones and they had been slow in releasing her. The mother provided all documents given to her during last meeting: medical consents, HIPPA and the medical passport, which she had signed. She wrote down that she wanted a copy of the HIPPA. She engaged with the children and shared from her back pack various snacks. The children were very excited and climbed over the mother for attention and approval. She responded to each of her children as best as she could.

The father has been assessed for therapeutic visitation. However visitation has not occurred due to the sexual abuse allegations.


## REASONABLE EFFORTS

Reasonable efforts were made to prevent or eliminate the need for the children's removal from the home. The mother received six months of family reunification services with San Francisco Child Welfare. She managed to follow through with all the requisites but it was later determined that contrary to what she had been stating, she had been allowing contact between the children and the father. Hence the children were removed shortly after they returned home.

Anthessa Theresa Grimes, et al                                                          16JD0171

*Kulse*

A referral was sent to Behavioral Health and Recovery Services to do an assessment for the father on whether or not therapeutic visitation is still recommended. As of November 11, 2016, clinician Isabelle Hernandez will be conducting the assessment.


## CONCURRENT PLANNING

The goal for the children Anthessa T. Grimes, Anthony A. Grimes, and Ariel Martinez Grimes, is reunification with the parents. However, if efforts to reunify within the statutory time period fail, the Agency, as required by the Welfare and Institutions Code, is planning for an alternative permanent plan for the children and will be providing not only reunification services as outlined in the Case Plan, but also services to achieve legal permanence for the children. The children will be referred to the Adoptions Unit for an adoptability assessment.

On November 15, 2016, the undersigned advised the mother of her option to participate in adoption planning and to voluntarily relinquish the children for adoption if an adoption agency is willing to accept the relinquishment. The mother's response was to cry profusely. When asked if she had any relatives she would wish the children placed, she shook her head. The mother cried and stated she did not wish to lose her children.


## ASSESSMENT/EVALUATION

This is a transfer-in case from the Superior Court of Californian County of San Francisco. The matter was set for a Dispositional Hearing. This family had Family Reunification Services offered through San Francisco County from January 28, 2015 until April 15, 2016. The family was offered twelve months of reunification services and one Dependency Matter was terminated on April 15, 2016. The issues that brought this family before the Court were domestic violence of the mother Maria T. Martinez by the father Carl A. Grimes. The mother successfully completed her case plan and court orders. The children were returned to her care. However, the children were detained on April 21, 2016 due to WIC 300 (a)(b)(g), and (j) as well as ongoing allegations of sexual abuse.

The family has had a pattern of homelessness in part due to the father who cannot maintain a steady job or permanent place to live. They have been removed from shelters due to chronic domestic violence and that the father has been aggressive towards shelter staff members as well as social workers in the past.

The mother has little contact with her previous four elder children and is not receiving any family support since her family disapproves of her relationship with the father. The father has had his parental rights terminated in regards to his elder two children who have since been adopted out. There has been no contact between the father and the children.

It is worth noting that the statement that the mother gave to the undersigned was almost identical to the statement that the father had given to the undersigned regarding the events of April 14, 2016. Both denied the father had been present, despite the fact that the father seemed to have knowledge of

Anthessa Theresa Grimes, et al _____ 16JD0171

the situation that seemed to counter-indicate that. Both parents claimed that the telephone records proved there had been no contact between the pair yet both claimed that even if there were there is no restraining order so no violation had taken place. The Brisbane Police reported that both parents are suing the Police Department and San Francisco Child Welfare Services together as a couple. The Brisbane Police Department informed the parents of the investigation and noted that both parents were on speakerphone hence the same room as this happened. The Brisbane Police Department believe that the father is residing with the mother at the same residence. When questioned by the undersigned the mother has not acknowledged any domestic violence, the most she has stated is that the father raises his voice but claimed he has always been that way. The mother appeared to minimize the impact of the domestic violence upon her and her family.

The undersigned interviewed the therapists involved with the children.
The children's eldest therapist Ms. Kasey Wallace reported that the child Anthessa reacted viscerally to the news she might have to have visitation with her father. Anthessa fled to a tunnel in the park and had to be coaxed out. Anthessa has spoken of the father telling her to "lick" her siblings "all over". Ms. Wallace described Anthessa's initial behavior in sessions as consisting of tearing apart of toys and paper.

Ms. Wallace has stated that the child Anthony had become more vocal and has provided some detail as to the domestic violence that has occurred. In addition when interviewed by the undersigned, Anthony stated that he did not wish to see his father because how his father hurts his mother.

The youngest Ariel was able to express to her therapist Ms. Suzanne Harkless to show her father is mean to her mother and her when drawing a picture of the family, this occurred not only once but twice and both situations were unprompted. Ms. Harkless described Ariel as being unguarded and latching on to any adult, she described her temperament as sweet and lovable.

The mental health clinician Ben Bruso has noted that the mother has a permissive parenting style and that she has a hard time establishing and maintaining boundaries. This has led him to question if she can maintain appropriate boundaries in regards to keeping the children safely away from the father. The mother will let the children play uninhibited and sometimes the situations are dangerous. The mother has a difficult time addressing issues and prefers to use soothing phrases or words rather than confronting an issue.

Despite past reunification services, the mother has failed to demonstrate the ability to protect her children from harm in that as she continued to expose them to domestic violence and had not utilized her resources to provide a safe environment for the children. Furthermore, when the child Anthessa, informed the mother of the sexual abuse by the father, she failed to protect the child and their siblings from further harm.

Since the children have expressed fear of their father and are fearful of the safety of the mother yet the mother has failed to acknowledge that fear, and that the mother has continued to minimize the issue of domestic violence; it appears that the mother may be still involved with the father. There is a reasonable possibility that if the children were returned to the mother's care, that they would be exposed to the father and to the ongoing unaddressed domestic violence as well as possible sexual abuse.

Anthessa Theresa Grimes, et al                                                    16JD0171

## CASE PLAN

Attached.

## RECOMMENDATION

Therefore it is respectfully recommended that the children be declared Dependent Children of the Court in an Out of home placement.

As to, it is respectfully recommended that the Court adopt the following JV Form(s): **JV-415, JV-421, JV-400, and JV-401, and JV-403** as submitted by the Agency.

As to, the Matter is set for a Family Reunification Six Month Review Hearing on **or before May 21, 2017.**

**Respectfully Submitted,**

San Mateo County, Human Services Agency

**By**

_____        11/16/16
Michael Sullivan, Social Worker, MD58, (650) 802-7688        Date

_____        11/16/16
Marsha Beaman, Social Worker Supervisor, (650) 802-3356        Date

**COUNTY OF SAN MATEO**
HUMAN SERVICES AGENCY

Iliana Rodriguez
Agency Director

Children and Family Services
1 Davis Drive, 2nd Floor
Belmont, CA 94002
650-802-5018 T
650-598-9785 F
www.smchsa.org

Carl Anthony Grimes
2949 Redwood Parkway
Vallejo, Ca 94591

March 22, 2017

Hello Mr. Grimes,

As stated in the case plan dated 11/15/16 you are to engage in the following service objectives:

1. Comply with all court orders
2. Do not sexually abuse your child(ren)
3. Do Not involve your child(ren) in attempts to control or intimidate your partner
4. Attend and demonstrate progress in a County Certified Domestic Violence Prevention Plan by completing a 52 week batters program
5. Express anger appropriately and do not act negatively on your impulses, by attending an anger management class to address anger issues.

I have attached a copy of the case plan for your records.

As of 3/21/17, a referral was initiated for a 16 week Anger Management program and a 52 week Domestic Violence Batterer Intervention program.

Here are the next steps if you are interested in completed the above outlined services:

You will need to contact the below providers to determine if class dates/times and your availability:

-El Centro de Libertad: Maria Cerrillo, Office Manager at (650) 599-9955.

-Bill Tiedeman/Anger Management and DV Batterer Intervention Treatment Services: Anel Chavez, Office Manager at (650) 375-0449

-Sitike Counseling Center: Joe Wagenhofer, Executive Director at (650) 589-9305



## SECTION TITLE: SUBJECT ##

Our San Mateo County Children & Family Services team is currently reviewing the referral and will be sending it to a provider of your selection. You can email HSA_CFS_Clinical_Services@smcgov.org with your selection only. Once the approval goes through, I will mail you the approval email including any fiscal obligations.

You are responsible to call the provider of your choosing to set up an intake session. Once you start sessions we are provided with an invoice so that we can track your participation in treatment services.

Should you have any additional questions regarding the referral process only please contact Supervisor John Echarte at (650) 877-5688.


Thank you,

San Mateo County
Children and Family Services
1487 Huntington Ave
S. San Francisco, CA 94080
(650) 877-5690
(650) 241-5811 (cell)